**CONTINENTAL CASUALTY COMPANY, a Corporation, Plaintiff,**

v.

**AMERICAN FIDELITY AND CASUALTY COMPANY, a Corporation, Defendant.**

**Civ. A. No. P–1715.**

United States District Court
S. D. Illinois, N. D.
March 19, 1959.

---

John E. Cassidy, Cassidy & Cassidy, Peoria, Ill., for plaintiff.

William J. Voelker, Jr., Heyl, Royster & Voelker, Peoria, Ill., for defendant.

MERCER, Chief Judge.

This cause arose on a complaint by plaintiff, Continental, against defendant, American, for judgment in the amount of $35,000, the demand representing amounts paid by the plaintiff to satisfy

three judgments entered in the Circuit Court of Fulton County, Illinois, and costs and attorney fees incurred by plaintiff in defending the action in the latter court. The facts of the case are set forth fully in an opinion by the court filed February 7, 1958, 159 F.Supp. 311, and will herein be briefly summarized only.

Defendant issued its policy of liability insurance to T. A. Kirchner, said policy covering a certain 1949 International Tractor and 1949 Fruehauf Semi-trailer owned by Kirchner. Plaintiff is liability insurer of Southwest Freight Lines, Inc., hereinafter referred to as Southwest, and as such its policy of insurance was, at all pertinent times, in full force and effect.

On April 8, 1952, said tractor-trailer was involved in a collision in Fulton County, Illinois, with an automobile driven by one Frank L. Moon. Said tractor-trailer was owned by Kirchner and, on said date, was being operated and driven by one Carl Page, an employee of Kirchner, in transporting merchandise for Southwest pursuant to a single-trip lease by Southwest of said vehicle. Moon and two passengers who had been riding in his automobile, Lawson Shryack and Leslie Cameron, filed suit in the Circuit Court of Fulton County, Illinois, against Kirchner, Page and Southwest, for damages for personal injuries sustained as a result of said collision. Defendant was requested to defend said suit and refused. Plaintiff defended and after trial judgments were entered in favor of Moon, Shryack and Cameron in the aggregate amount of $21,050. The judgments were paid and satisfied by the plaintiff.

Thereafter plaintiff commenced this action against defendant for the amount paid by it in satisfaction of the Fulton County judgments, and the costs and attorney fees incurred in defending the suit in Fulton County. Thereafter plaintiff and defendant filed cross-motions for summary judgment. On February 7, 1958, 159 F.Supp. 311, the court entered an opinion and judgment order allowing plaintiff's motion for summary judgment and denying defendant's cross-motion.

Upon the basis of the facts as summarized above, the court concluded that the provisions of the single-trip lease providing that Southwest should take control of the vehicle and that Southwest should carry liability insurance covering the trip were not sufficient to excuse Kirchner from liability because of the circumstances existing at the time of the accident involved in the Fulton County case; that Kirchner was an independent contractor and had complete control of the vehicle at the time of collision and therefore, was primarily liable; that Southwest was liable upon the basis of its ownership of the Interstate Commerce Commission Permit under which the trip was being made and its consonant responsibility to the public generally; and that the liability established by the Fulton County judgments was the liability of both plaintiff and defendant and was an equal one. The court concluded, also, that "The insurance protection involved here with both companies was primary coverage and in the opinion of the Court a question of excess coverage need not be considered." Accordingly, judgment in the amount of $10,525 with interest thereon from March 17, 1955 to date of judgment.

Thereafter on February 14, 1958 defendant filed its motion to alter and amend the judgment in its favor, which motion is now before the court. That motion is predicated upon two contentions. One of these contentions, viz., that the court misconstrued the law of agency in finding primary liability against Kirchner is adequately considered in the February 7 opinion. The court sees no reason to disturb its prior findings and conclusions in this respect.

Alternatively defendant contends that the court in its prior opinion overlooked the "other insurance", provisions of the respective policies of insurance. Thus it contends that the court's finding of concurrent coverage on the application thereto of the other-insurance provisions

of the two policies, requires that the Fulton County judgments be apportioned between the plaintiff and defendant in the proportion which the maximum coverage of each of the respective policies bears to the total amount of available and enforceable coverage under the two policies.

I agree that the court did overlook the "other insurance" provisions of the two policies and that, if the finding of concurrent primary coverage be correct, defendant's contention that apportionment of liability is necessary is correct. Zurich General Accident & Liability Insurance Co. v. Clamor, 7 Cir., 124 F.2d 717. Upon consideration of those provisions of the two policies, however, it appears that the overlooking of such provision led to the erroneous conclusion that this is a case of concurrent primary liability and that no question of excess coverage is presented.

Condition 13 of plaintiff's policy and Condition 12 of defendant's policy, to which the court's attention is directed by this motion, provide, as follows, respectively:

"13. Other Insurance. If the insured has other insurance against a loss covered by this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to such automobile or otherwise."

"12. Other Insurance. Coverages A and B If the insured has any other insurance against a loss covered by this policy the company shall not be liable under the policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to temporary substitute automobiles under Insuring Agreement IV or other automobiles under Insuring Agreement V shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to said automobiles or otherwise."

In addition to the above Condition 13, plaintiff's policy of insurance contains an "other insurance" endorsement in the following language:

"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability, for Property Damage Liability and for Medical Payments with respect to a loss arising out of the use of a hired automobile shall not be considered contributory, but shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under the policy applicable with respect to such automobile or otherwise."

A "hired automobile" is defined in plaintiff's policy as "an automobile used under contract in behalf of, or loaned to, the named insured" provided such automobile is not owned by the insured, its officers or agents.

Thus, the "other insurance" provisions of the two policies are essentially identical and must be construed as if both were phrased in identical language. If both policies provide primary coverage under the facts of this case it is settled in this Circuit that "the two insurers would be liable in proportion to the amount of insurance provided by their respective policies." Zurich General Accident & Liability Insurance Co. v. Clamor, 7 Cir., 124 F.2d 717, 720; See McFarland v. Chicago Express, Inc., 7 Cir., 200 F.2d 5.

The determinative factor in each case of this nature, however, is the interpretation of the language of the insurance policies involved, a question which may be, as Judge Major so aptly observed, as easy of solution as "the old controversy as to which came first, the hen or the egg". Zurich case, supra, 124 F.2d at page 719. Prior Court decisions are apposite only if a comparison of policy provisions reveals that the language of the policy under consideration is identical to that of a policy previously construed by the courts, and if the circumstances of the two cases are essentially identical.

Here, the automobile which was involved in the Fulton County accident was owned by Kirchner and at the time of said accident was being operated by Kirchner through his employee, Page. Assuming, arguendo, that the agreement by Southwest, contained in its single-trip lease with Kirchner, to take control of the vehicle is sufficient to bring the vehicle within the "non-owned automobiles" and "hired automobiles" coverage of plaintiff's policy, still the coverage provided by that policy under the circumstances is expressly limited to excess coverage over any other valid and collectible insurance available.

Although inapposite on the facts, the case of McFarland v. Chicago Express, Inc., 7 Cir., 200 F.2d 5, is applicable to the decision of this case. In that case, McFarland was injured in an accident involving a truck owned by Butterfield Canning Company which was then being operated by Chicago Express under a single-trip lease. At the time of the accident, Chicago Express was insured by Hartford Accident and Indemnity Company against liability arising out of the use of commercial vehicles "owned and/or operated" by the named insured. At the same time, Butterfield had in effect a policy of insurance issued by American Employer's Insurance Company of Boston, Massachusetts, insuring it against liability "arising out of the ownership, maintenance or use of any automobile". The word "insured" was so defined in the American policy that the court held that Chicago Express was an insured person under that policy.

The American policy provided that if other valid insurance protected "the insured" from liability, that its policy would be void except that the policy would constitute excess coverage over "the applicable limit of liability of such other valid insurance". Hartford's policy contained an "other insurance" clause which provided that if other "valid and collectible insurance" covered the claim, that Hartford would be liable only pro-rata, in the proportion which the limit of liability of its policy bore to the applicable limit of liability of all valid and collectible insurance. Apparently the Hartford policy did not contain an "excess coverage" provision. The Court held, under the circumstances, that Hartford was liable for McFarland's claim for damages to the extent of the limit of liability of its policy and that the American policy applied only as excess coverage.

I think the same principle applies here. As insurer of Kirchner, the owner and operator of the automobile in question, defendant's policy provides primary coverage in the ratio which the limit of liability of its policy bears to the applicable limit of liability of all valid and collectible insurance. Interpreting the facts of the case most favorably to defendant, plaintiff became an insurer only by reason of the "hired automobile" and "non-owned automobile" clauses of its policy. Clause 13 and the "Other Insurance" endorsement of that policy expressly restrict plaintiff's liability under those circumstances to that of an "excess" insurer. Plaintiff's policy therefore, does not constitute "other valid and collectible insurance", but only excess coverage. The liability of the Fulton County judgments is clearly within the applicable limits of defendant's policy.

This is not a situation in which each of the respective policies provides coverage for both Kirchner and Southwest, as was the situation in the Zurich case, supra, which prompted the court to observe that identical policy provisions would require

proration of the loss. Such a result is possible here only if the lease between Southwest and Kirchner be construed as extending the coverage of plaintiff's policy. If that leasing agreement could be so construed in any event, a question upon which I express no opinion, Exclusion (a) of plaintiff's policy expressly negatives that result in its provision that the policy does not apply "to liability assumed by the insured under any contract or agreement."

■ From what has been said, it follows that the court erroneously concluded in its February 7 opinion that both the policy of plaintiff and that of defendant provide primary coverage of this risk and that no question of excess coverage is presented. When the "other insurance" provisions of each policy are considered in the light of the facts of this case, the court must conclude that defendant was the primary insurer of the risk involved in the Fulton County suits and plaintiff the excess insurer only and that plaintiff is entitled to judgment in accordance with that conclusion.

■ The only question remaining, and a question which arises by reason of the above conclusion, is whether or not the court has power, under F.R.Civ.P. 59(e), 28 U.S.C., to enter judgment in accordance with its conclusions herein expressed. To my knowledge there has not to date been a judicial determination whether a motion by a party to alter or amend a judgment merely presents to the court the issues therein expressly raised or whether the effect of such a motion is to open up the judgment for correction also of any other error which may have intervened in entry of the judgment.

I think the latter is the effect of such a motion; that it opens up the judgment and permits the court to correct any error which comes to its attention because of such motion. If this is not so the Rule would accomplish the incongruous result of compelling a court to knowingly perpetuate error simply because the particular error was not mentioned by the moving party, or, in the alternative,

to reinstate the cause for further needless proceedings.

The language of Subsection (e) of Rule 59 is not particularly helpful. Thus, that subsection provides only that "A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment". The history of that provision suggests, however, that the paragraph of Rule 59 was intended as an express recognition of the inherent power of a trial court to correct errors of law and of fact which have intervened in the entry of any judgment, and as an adoption of the rule established in Boaz v. Mutual Life Ins. Co. of New York, 8 Cir., 146 F.2d 321.

The Boaz case was an action by the beneficiary upon a double indemnity life insurance policy. The insurer defended upon the ground that the claim was not payable because the insured had taken his own life. As a counter contention the plaintiff alleged that, at the time of his taking his own life, the insured was insane and that, therefore, suicide was no defense to the claim of the beneficiary. At the close of plaintiff's evidence defendant moved for a directed verdict on the ground that the plaintiff had failed in her proof of insanity. At the same time plaintiff moved orally for dismissal of the cause without prejudice, without making any showing that she would have any further evidence to adduce upon reinstatement of the cause. Plaintiff's motion was granted and a judgment entered dismissing the cause without prejudice. Two days after entry of the judgment the insurer moved to set aside the judgment and to enter a new judgment dismissing the cause without prejudice. The latter motion was granted and judgment entered dismissing the cause with prejudice, the court holding that it had inherent authority over its judgments during the term, even to the extent that it might vacate, modify or change its decision on the merits. Boaz v. Mutual Life Ins. Co. of New York, D.C.E.D.Mo. 1944, 53 F.Supp. 97.

On appeal the court of appeals for the Eighth Circuit, one judge dissenting,

affirmed the judgment. Boaz v. Mutual Ins. Co. of New York, 8 Cir., 146 F.2d 321, 323. In so holding the court stated in the majority opinion as follows:

> "It is evident that the parties and the court understood that the court was then called on to decide whether plaintiff should have leave to dismiss without prejudice or whether the defendant should have a final dismissal. That was an issue which the court decided at the trial in favor of plaintiff. On the reconsideration required by defendant's motion the court was convinced that such decision was erroneous. * * There was neither error nor abuse of discretion in terminating the law suit so far as the district court was concerned by final dismissal". 146 F.2d at page 323.

Judge Johnsen, dissenting, took the view that a federal trial court, after judgment, can not reach out and "recapture" its hold upon the proceedings and readjudicate "the merits of the litigation without further proceedings and enter a dismissal with prejudice";—that the court had power only to approve the judgment or reinstate the cause for a new trial. 146 F.2d 324.

The Boaz case prompted the Advisory Committee on Amendments to Rules, in its recommendations made in 1946, to propose the adoption of the present paragraph (e) as an addition to Rule 59. That proposal was submitted by the committee with the following recommendatory note:

> "Subdivision (e). This subdivision has been added to care for a situation such as that arising in Boaz v. Mutual Ins. Co. of New York, C.C.A. 8, 1944, 146 F.2d 321, and makes it clear that the district court possesses the power asserted in that case to alter or amend a judgment after its entry. * * *." 28 U.S.C.A., pp. 270–271.

That recommendation was followed and the present provision for motion to alter or amend a judgment was added as a new paragraph, (e) to Rule 59, which governs procedure on motions for new trial.

The provisions of Rule 59 must be construed together if the Rule is to provide a comprehensive procedure governing post-trial and post-judgment motions. Relative to motions for a new trial, the Rule provides, inter alia:

> " * * *. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment." F.R.Civ.P. 59(a).

> "Not later than 10 days after entry of judgment the court of its own initiative may order a new trial for any reason for which it might have granted a new trial on motion of a party, and in the order shall specify the grounds therefor." F.R.Civ.P. 59(d).

Paragraph (e) of the Rule which merely fixes the time within which a motion to alter or amend shall be filed, must be construed as contemplating a procedure coextensive in its scope and its grant of power to the trial court with that upon motions for a new trial. Any other construction would render paragraph (e) meaningless. I think the position untenable to suggest that the court might on its own initiative within ten days after entry of judgment decide that the judgment is erroneous, set the same aside and grant a new trial, but that the court has not the power, upon a motion under Rule 59(e) to alter a judgment to take like notice of errors which fatally affect its judgment.

The court is not restricted to specific contentions of error raised in defendant's motion. Such a result would create an absurdity. It would compel a court under certain circumstances, faced with the conclusion that its prior decision was erroneous, to compound the error by abiding by that prior decision.

merely because the error pervading the judgment is not among those which are raised by a motion to amend. The effect of the motion before us is to open the February 7 judgment and invite the court's reconsideration of the propriety thereof.

That interpretation of the Rule is consistent with the recent decision of the Court of Appeals for the Third Circuit in Ryans v. Blevins, 3 Cir., 258 F.2d 945. In Blevins, upon a complaint for damages for personal injury tried by the court without a jury, the trial judge found that both parties to the accident had been guilty of negligence, but found that the defendant had had the last clear chance of avoiding the accident and, under Delaware law, was liable to the plaintiff for damages. Judgment was entered for the plaintiff in the amount of $11,-349.00. A motion for a new trial was filed in due course. Prior to decision on that motion the judge who had tried the case retired and the motion for new trial was heard by his successor. Upon consideration of the motion for new trial the court entered new findings of fact which excluded the "last clear chance" doctrine, vacated the judgment in favor of the plaintiff and entered judgment for defendant. Ryans v. Blevins, D.C.Del. 1958, 159 F.Supp. 234.

In a memorandum opinion the court of appeals affirmed, Ryans v. Blevins, 3 Cir., 258 F.2d 945, holding that the district court had properly exercised power granted to it under Rule 59 to correct error and enter a new judgment, since that result was not predicated upon new findings of evidentiary facts. The court placed its affirmance upon the basis that, irrespective of any difference in interpretation of facts by the two judges who had sat in the case, the judgment for the defendant was correct.

■ In this case the court is concerned only with the legal question of interpretation of the express provisions of insurance contracts. And where, as here, the court is convinced that its prior judgment is incompatible with the interpretation of the contracts which is ne-

cessitated by a full consideration of such express provisions, the court has the power under Rule 59 to vacate its prior judgment and enter a new judgment.

The judgment of February 7, 1958, is vacated, and judgment is hereby entered in favor of plaintiff and against defendant, in the amount of $21,050, together with interest on said amount at the rate of 5% per annum from March 17, 1955 to the date of this judgment, and together with attorney's fees in the amount of $2,377.90 and its costs expended in this proceeding.