**INTERSTATE PLYWOOD SALES COM-PANY, a corporation, Appellant,**

v.

**INTERSTATE CONTAINER CORPORA-TION, a corporation, Appellee.**

No. 18785.

United States Court of Appeals
Ninth Circuit.

April 30, 1964.

Rehearing Denied May 22, 1964.

Dunne, Dunne & Phelps, and Desmond G. Kelly, San Francisco, Cal., Koerner, Young, McColloch & Dezendorf, James C. Dezendorf and James H. Clarke, Portland, Or., for appellant.

O'Gara & McGuire, James O'Gara, Jr., E. James McGuire, Walter R. Wright, San Francisco, Cal., for appellee.

Before ORR, HAMLEY and BROWNING, Circuit Judges.

ORR, Circuit Judge.

Appellee Interstate Container Corp. (referred to hereafter as "Container Corp."), a producer of Digger pine veneer, desired to enter the plywood manufacturing business. In order to do so Container Corp. needed to install machinery to manufacture finished plywood from the veneer material it was then producing. To this end it entered into a contract with appellant Interstate Plywood Sales Co. (hereafter referred to as "Sales Co.") on October 31, 1955, wherein Sales Co., a seller of plywood, undertook to supply the necessary machinery to Container Corp. on credit, and to loan funds to Container Corp. to enable it to enter the plywood business.

The contract provided that Sales Co. was to have

"the exclusive option to buy from [Container Corp.], 95% of the square feet of veneer or plywood produced in its plant at Red Bluff, California."

The contract contemplated that Sales Co. would exercise its option to buy plywood if and when it had firm orders from its customers for the purchase of a quantity of plywood. In the event that Sales Co. was unable to market the entire 95% of production it was to inform Container Corp. of the portion it did not intend to option. Container Corp. would then be free to sell that part of its output through brokers or its own sales organization. Sales Co. was to be, in effect, the exclusive distributor for Container Corp.

By the contract Sales Co. undertook

"so far as possible, * * * to provide [Container Corp.] with orders for 95% of the output of its veneer or plywood. Such orders shall be at the 'market price' of veneer or plywood."

"Market price" was defined as follows:

"The parties agree that the published market price listed to jobbers by the following plants shall be for the purposes of this agreement the 'market price':

United States Plywood Corporation, Anderson, California

Sonoma Plywood Company, Sonoma, California

Tri-State Plywood Company, Santa Clara, California

Industrial Plywood Corporation, Willits, California

Plywood, Inc., Klamath Falls, Oregon"

The "five-mill" pricing formula thus set up became unworkable shortly after the contract was executed because some of the listed mills went out of business, and others did not publish prices. This

situation required the parties to ignore the five-mill formula, neither party referring to it until after this dispute arose.

Despite the failure of the five-mill formula, the parties continued doing business. Their officials would from time to time discuss the condition of the plywood market, prices quoted by other mills, industry price letters, offers made by customers of Sales Co., and such other information relative to the price of plywood they could become possessed of. After such discussions the parties would agree on the price Sales Co. was to quote to its customers for plywood. Having thus fixed the price Sales Co. was to charge, there were certain discounts provided for in the contract which determined the price that Container Corp. received from Sales Co. for its product.

The prices thus arrived at would hold for one or more transactions, until market conditions indicated that a price change was in order. The aim of the parties in setting a price, of course, was to be competitive; the resultant figure was intended to be "actual going market price", the "price at which plywood moves".

When the parties came to a price agreement, Sales Co. would place a written order for direct delivery to whatever customer it had made a resale to. Occasionally the parties disagreed on the state of the plywood market and would not be able to reach a mutually acceptable price figure. When such irreconcilable deadlocks arose, Sales Co. did not insist on exercising its option at the figure it thought appropriate; rather, it permitted the matter to drop.

This course of dealings ended on November 14, 1960, at which time Container Corp. notified Sales Co. that it would no longer continue with the sales option. Sales Co. then brought an action in the District Court for breach of contract, claiming damages from loss of future profits under the contract, and from "outside sales" which Container Corp. had made to others without its permission before the repudiation.

Two trials, the court sitting without a jury, were had below. The trial court found on the first trial that the five-mill formula had been intended to apply only to Digger pine plywood,[1] and concluded that the failure of the five-mill formula did not make the contract unenforceable because of price uncertainty as to Douglas fir plywood. The trial court held that the contract was one for the sale of Douglas fir plywood at the general market price for that commodity.

A new trial was then granted, on the motion of Container Corp., limited to the issues of breach and damages, and specifically excluding the issues of contractual validity and enforceability. During the retrial Sales Co., in order to maximize damages, insisted that the five-mill formula had been intended to apply to Douglas fir, as well as Digger pine, plywood. Container Corp. agreed that the formula was intended to cover all plywood. The trial court thus found on retrial that the basis for its prior decision on contractual enforceability had been in error. It therefore re-examined its first decision and concluded that the five-mill formula had been intended to apply to all plywood, and that the failure of the formula caused the entire contract to be unenforceable. Judgment was accordingly entered for Container Corp.

Sales Co.'s first contention on appeal is that the trial court erred in deciding the case on an issue not before it in the second trial. Since Sales Co. itself asked that the pricing provision be construed again at retrial, and further, because it is not claimed that there is any evidence on contractual validity which was not introduced below, the trial court

---

1. When the contract was executed the parties contemplated that Container Corp. would make Digger pine plywood. This was a new product, though, and was not successful on the market. As a consequence Container Corp. ceased Digger pine production about two years after the contract was entered into, and since then has produced Douglas fir plywood exclusively.

properly considered the new evidence and changed its decision to conform thereto.[2]

■ Sales Co. also contends that the pre-trial order entirely removed the issue of price uncertainty from the case. However, the pre-trial order included as an issue whether the contract was "valid and enforceable". Since a contract is not "valid and enforceable" if the element of price is missing,[3] the order was sufficient to present the issue of price uncertainty. And even if the pre-trial order did not include the issue, the order was capable of "de facto" amendment by the trial court's findings.[4]

■ On the merits, the principal question presented is whether the five-mill pricing formula was designed to be the only binding means of setting price under the contract, or whether the contract called for sales of plywood at the general market price, with the five-mill formula being merely a guide thereto. The trial court found that: the five-mill formula was put into the contract as the method of fixing price if the parties could not agree on what the current market price of plywood was; the formula was intended to be the sole and objective binding means of fixing price under the agreement; and the failure of the five-mill formula left the parties without any means of determining a binding price, so that neither was obliged to deal at a price not mutually acceptable.

The trial court also found that notwithstanding that the parties had a contract lacking price, they did not totally abandon it. Instead, they "waived" the contractual five-mill definition of "market price" and read "market price" in its general sense. This enabled them to continue doing business under the other contractual provisions.

These findings of the trial court are not clearly erroneous.[5] On their face, the contractual provisions quoted supra indicate that the parties intended to give a special definition to the term "market price". Such a special contractual definition is usually intended to be exclusive, eliminating the general meaning which would ordinarily be given such terms. This interpretation is supported by the testimony of several witnesses: they said that the five-mill formula was inserted in the contract as a method to "settle a price for all [plywood]"; that "we set down five mills that we were supposed to use as an average * * * to determine what we were going to sell our plywood at."; that "for the determination of price certain mills should be put into the contract as * * * an outside standard upon which to determine prices".

■ The conclusion of the trial court that the contract was unenforceable is in accord with California law, which controls here. Price is an essential contractual element: it cannot be supplied by the court,[6] and when the price cannot be determined in the manner in which the parties intended, the contract is unenforceable.[7] When the five-mill formula, intended here as the

2. See Continental Casualty Co. v. American Fidelity & Cas. Co., 186 F.Supp. 173 (S.D.Ill.1959), aff'd 275 F.2d 381 (7th Cir. 1960).

3. 1 Williston, Contracts § 41 (3d ed. 1957).

4. American Pipe & Steel Corp. v. Firestone Tire & Rubber Co., 292 F.2d 640 (9th Cir. 1961).

5. Fed.R.Civ.P. 52(a); Grace Bros. v. C. I. R., 173 F.2d 170 (9th Cir. 1949).

6. Distinguish the situation where the contract entirely fails to mention price; it will then be implied that the parties intended to deal at a reasonable price. Cal. Civil Code § 1729(4); Great Western Distillery Products, Inc., v. John A. Wathen Distillery Co., 10 Cal.2d 442, 74 P. 2d 745 (1937). Since the parties attempted to set a price here, their intent to deal at a reasonable price cannot be implied.

7. California Lettuce Growers, Inc. v. Union Sugar Co., 45 Cal.2d 474, 289 P.2d 785, 49 A.L.R.2d 496 (1955); Jules Levy & Bro. v. A. Mautz & Co., 16 Cal.App. 666, 117 P. 936 (1911); Canadian Nat'l Ry. Co. v. George M. Jones Co., 27 F.2d 240 (6th Cir. 1928); Turman Oil Co. v. Sapula Refining Co., 124 Okla. 150, 254 P. 84 (1926).

only binding method of fixing price, became indeterminable the contract became unenforceable.

The waiver of the five-mill pricing provision by the parties in their dealings with each other does not change this result. Under California law, an oral modification of a written contract is effectual only with regard to the executed portions thereof;[8] the contract here was not changed by the waiver, but remained unenforceable for future transactions.

■■■ Sales Co. argues that the parties did not waive the five-mill formula, but merely made a "practical construction" of the contract to the effect that it required sales at the general market price, and that the five-mill provision was only a guide to that price. A practical construction, shown by the actions of the parties before a dispute arises, is one means of determining what the intent of the parties was when they entered into the contract.[9] The trial court did not find the evidence of such a practical construction convincing, and we agree. Sales Co. was selling Container Corp.'s production in the open plywood market, where it would have been impossible or unreasonable to sell for a price other than the market price; the fact that the parties dealt at the market price therefore does not point inescapably to the conclusion that they had a contract to do so. The market price of plywood is difficult to determine and sales are made within a wide "spread" or range of prices. It was thus reasonable for the parties to insert a contractual provision which would make the price that Container Corp. was bound to accept capable of precise determination. That the parties, after the formula failed, continued to deal within the only price range that they could is of little weight in interpreting their contract.

Sales Co. also alleges that Container Corp. breached an implied obligation under the contract by making direct sales of plywood to outsiders without Sales Co.'s permission. As heretofore stated, the contract ceased to be enforceable when the price became indeterminable; since any implied promises fell with the contract, Container Corp. incurred no liability by reason of the outside sales.

Affirmed.

8. Cal.Civil Code § 1698.

9. Bohman v. Berg, 54 Cal.2d 787, 8 Cal. Rptr. 441, 356 P.2d 185 (1960).