**Branson CLINE, Plaintiff,**

v.

**Wilbur J. COHEN, Secretary of Health, Education and Welfare, Defendant.**

**No. 2439.**

United States District Court
S. D. West Virginia,
Huntington Division.

Jan. 2, 1969.

Marshall G. West, West, Blackshear & Rundle, Pineville, W. Va., for plaintiff.

Milton J. Ferguson, U. S. Atty., George D. Beter, Asst. U. S. Atty., Huntington, W. Va., for defendant.

CHRISTIE, District Judge:

This is an action under Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare. A decision by a hearing examiner on February 29, 1968 became the final decision of the Secretary on April 26, 1968, when the Appeals Council denied plaintiff's request for review. The final decision holds that plaintiff is not entitled to the establishment of a period of disability or disability insurance benefits under the provisions of the Act.[1]

Plaintiff last met the special earnings requirements of the Social Security Act as of September 30, 1964. Under the Act, 42 U.S.C.A. § 416(i), an individual cannot be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required. To meet this requirement, the claimant must establish that he suffered from such disability on or before the last day of his special insured status. Davidson v. Ribicoff, 204 F.Supp. 368, 369 (S.D.W.Va.1962). Thus the burden is upon the plaintiff to establish by credible evidence that he was disabled within the meaning of the Act prior to September 30, 1964, when he last met the special earnings requirements, though such proof need not be carried beyond a reasonable doubt. Thomas v. Celebrezze, 331 F.2d 451 (4th Cir. 1964).

The standard of review in actions of this nature is found in Section 205(g) of the Act, as amended, and is as follows:

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

In short, the Courts are not to try the case *de novo*, and if the findings of the Secretary are supported by substantial evidence, the Courts are bound to accept them. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). Nevertheless, it is said that this provision of the law does not contemplate that the Courts should surrender their "traditional functions," but rather that they will view the record as a whole, not for the purpose of making an independent finding, but to determine whether or not the finding is supported by substantial evidence and to see to it that the administrative agency does not act arbitrarily or capriciously in denying just claims or allowing unworthy ones. Thomas v. Celebrezze, su-

---

1. The term "disability" is defined in Sections 216(i) and 223 of the Social Security Act, as amended, to mean: "(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

The 1967 Amendments to the Act imposed the additional reqirement that "(A) an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." Work which exists in the "national economy" is defined in the Amendments as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country."

pra; Underwood v. Ribicoff, supra; Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962). In determining the meaning of "substantial evidence," the Courts have held it to be more than a scintilla, but less than a preponderance. Thomas v. Celebrezze, supra. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be based on the record as a whole. Celebrezze v. Bolas, 316 F.2d 498 (8th Cir. 1963). The Fourth Circuit has pointed out that if there is only a slight preponderance of the evidence on one side or the other, the findings of the Secretary must be affirmed. Underwood v. Ribicoff, supra. Therefore, the immediate task of this Court is to determine whether the defendant's denial of plaintiff's claim is supported by substantial evidence.

In his application filed June 27, 1967, plaintiff alleged that he became unable to work in May of 1967 [2] as a result of "high blood, arthritis, diabetes." On April 9, 1963, he filed an application alleging that he became unable to work on November 8, 1962, as a result of "sugar diabetes & high blood pressure." This application was denied initially, upon reconsideration and by a hearing examiner following an evidentiary hearing on October 15, 1964, at which plaintiff was represented by counsel. This denial by the hearing examiner was based upon his finding that "by a fair preponderance of the credible evidence at the hearing * * this claimant possessed, and still possesses, residual capacities readily and reasonably transferable to related fields of work in the general or national economy, and in the local county or state economy well within 100 miles of his place of residence in Baisden, Mingo County, West Virginia." Plaintiff took no further ac-

tion in regard to this decision, and it accordingly became the final decision of the Secretary with respect to the 1963 application. Thus, on the basis of the prior adjudication of his claim, plaintiff is precluded by the doctrine of *res judicata* from contesting the finding of the Secretary as to his ability to engage in substantial gainful activity up to and including July 9, 1963.[3] James v. Gardner, 384 F.2d 784 (4th Cir. 1967); Farley v. Gardner, 276 F.Supp. 270 (S.D.W.Va. 1967). The narrow question presented by this review is, therefore, whether or not plaintiff became disabled between July 19, 1963 and September 30, 1964, the date on which his insured status expired. To resolve this question, we must look to the evidence submitted by the plaintiff in connection with his present application to determine whether or not his condition has changed or worsened subsequent to the previous decision of the Secretary finding him not disabled. Upon careful scrutiny of the evidence of record in this case, we find on the one hand little credible evidence to indicate any substantial change in plaintiff's condition subsequent to the earlier decision by the Secretary, and on the other hand substantial evidence to support the decision of the Secretary finding plaintiff's condition not of such severity as to prevent him from engaging in a number of jobs constituting substantial gainful activity. Under these circumstances the decision of the Secretary must be affirmed.

Plaintiff has submitted only two medical reports in connection with his most recent application and both of these reports were based upon examinations performed well after the expiration of his insured status in 1964. The late date of these examinations alone casts serious

2. During the course of the hearing plaintiff testified that he became unable to work on November 8, 1962 rather than in May of 1967 and it was on the basis of the former allegation that the Secretary relied in reaching his decision.

3. Under the law in effect prior to the 1965 Amendments to the Social Security Act,

a claimant had to establish the onset of disability no later than the first day of the third month after the month of filing the application in order to be entitled to disability insurance benefits. Thus, the adjudication with respect to plaintiff's first application, filed April 9, 1963, would only cover the period ending July 9, 1963.

doubt upon their usefulness in determining whether or not plaintiff was disabled within the meaning of the Act prior to the expiration of his insured status on September 30, 1964, however, as will be seen, more substantial reasons exist for denying plaintiff benefits than the lateness of the examinations. The first of these two reports, dated August 15, 1967, was prepared by Dr. Edward Gliserman. On physical examination, plaintiff was described as a well developed, heavy-set man. Blood pressure was given as 130/90; pulse regular and heart size and sounds normal. The palpable arteries were described as "firm." An old fracture of the elbow limited movement of the left arm. On the basis of this somewhat limited examination, Dr. Gliserman made the following diagnosis:

1. Arteriosclerotic heart disease.
2. Coronary sclerosis.
3. Arthritis of the spine, ribs and shoulder points.
4. Refractive error.
5. Severe arteriosclerosis, lower legs.
6. Diabetes mellitus.
7. Deformity of the left arm.

Relying upon this diagnosis, Dr. Gliserman expressed the opinion that plaintiff was "totally disabled for work."

Plaintiff's most recent examination, dated February 3, 1968, was prepared by Dr. Ferdinand Viscuse, a general practitioner in Logan, West Virginia. In this report it is indicated that in 1962 plaintiff had suffered pain around the heart radiating down the left arm to the hand and shortness of breath, which was diagnosed as angina. Also in 1962, he experienced pain in the lower back radiating down both hips, buttocks and legs, and as a result of this pain he was treated for sciatic neuritis and arthritis. X-rays of the left elbow revealed some deformity of the distal extremity of the left humerus, and X-rays of the lumbosacral spine showing some hypertrophic changes involving the lumbar-vertebral bodies, with a slight loss of normal lumbar curvature. On physical examination, plaintiff exhibited pain over the lumbo-sacral spine, both shoulders, cervical spine, left knee, both hips, both buttocks and the back of both legs. Examination of the left leg revealed atrophy of the muscles and "hypoasthesia" from the hip to the ankle. Straight leg raising on the left was limited 50% of normal with pain in the lower back. The lumbo, sacral spine was limited 60% of normal on extension and flexion and 20% of normal on lateral rotation. The cervical spine was limited 10% of normal on extension, flexion and lateral rotation, and the left shoulder 20% of normal on adduction and abduction. The heart was described as enlarged with a systolic murmer in the aortic area, and the peripheral vessels were described as sclerosed. Blood pressure was given as 160/100. Urine analysis revealed a 4+ sugar. On the basis of his examination, Dr. Viscuse made the following diagnosis:

1. Arteriosclerotic heart disease with angina Class 3 and D.
2. Hypertensive heart disease with cardiac enlargement.
3. Chronic arthritis of the lumbo-sacral spine, cervical spine, both shoulders, both hips, left knee and left elbow.
4. Chronic diabetes.
5. Chronic kidney disease.
6. Pulmonary emphysema.
7. Generalized psoriasis.

In the doctor's opinion, plaintiff was and has been "for several years" totally and permanently disabled for any type of work.

▮ It is obvious that if the Secretary were bound by the findings of the two previous reports he would, of necessity, have to find plaintiff disabled and entitled to benefits under the Act. However, two very important reasons exist for refusing to hold the Secretary bound by these medical findings, the first of which is the late date of the actual performance of the examinations. Our review of the medical evidence upon which

the Secretary's decision is based is limited by the circumstance that any disability that has its onset or becomes disabling after the claimant last met the earnings requirements may not be the basis for a favorable finding. Taylor v. Ribicoff, 204 F.Supp. 144 (S.D.W.Va. 1962). Thus, the medical reports submitted subsequent to the expiration of plaintiff's insured status will be treated only insofar as they throw light on his condition as of that time. The fact that he may now be disabled as a result of a deterioration in his condition or because of other ailments that were not present as of September 30, 1964, is not pertinent to this decision. The second, and perhaps most compelling reason, for refusing to accept the conclusions offered in the more recent medical reports is the fact that the findings of these reports are in direct contradiction to the findings of the reports made nearer in time to the period in which plaintiff's insured status expired. The finding of angina by Dr. Viscuse must be contrasted with the absence of any such finding by Dr. E. M. Delbarre, a Diplomate of the American Board of Internal Medicine. Dr. Delbarre's examination included an electrocardiogram which showed "no significant abnormalities," and a chest X-ray which showed the heart "to be of normal size" and the great vessels "of normal configuration." Likewise, the seemingly severe restrictions upon plaintiff's range of motion indicated in the later reports is contradicted by the more nearly normal findings of Dr. Burger, of the Grace Hospital, Welch, West Virginia. Of course, the finding of diabetes was made by all of the examining physicians, however, as was pointed out in one of the reports, if plaintiff "follows instructions, he can keep his disease regulated." This same physician stated with respect to plaintiff's condition that he knew of "no impairment which would keep him from working."

From the above, it would appear that in this case we have, on the one hand, reports indicating a disabling condition which were prepared well after the expiration of plaintiff's insured status, and on the other hand, reports prepared prior to the expiration of plaintiff's insured status which directly contradict the later findings. Under such circumstances, our duty is clear since, even if we consider the later medical reports relevant for the purposes of this decision, we are merely faced with a conflict in the medical evidence and would accordingly be required to defer to the decision of the Secretary insofar as it was based upon a situation in which conflicting conclusions might reasonably be drawn by different individuals. As has been pointed out on numerous occasions, the Secretary and not the Courts is charged with resolving such conflicts in the evidence, and it is immaterial that the evidence before the Court will permit a conclusion contrary to that of the Secretary. Thomas v. Celebrezze, supra; Snyder v. Ribicoff, supra; Allison v. Ribicoff, 307 F.2d 379 (4th Cir. 1962). Though there may be substantial evidence to support inconsistent findings, the District Court is required to accept the administrative findings if, as is true in the present case, they are supported by substantial evidence.

Therefore, considering the absence of any new medical reports establishing a disabling condition *during the period plaintiff maintained his special insured status*, as well as the basic similarity between the testimony offered at the 1964 hearing and that offered at the 1968 hearing, we cannot in good conscience say that the Secretary's findings as to plaintiff's ability to engage in any substantial gainful activity is not supported by substantial evidence of record.

Accordingly, viewing the record as a whole, it is clear that a reasonable mind could very well have reached the same conclusion as did the Secretary—that the evidence failed to establish the claim asserted—and that being so, the defendant's motion for summary judgment must be granted.