**Robert A. LENNON,**
**Plaintiff-Appellee-Cross-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellant-Cross-Appellee.**

**No. 685, Docket 77–6167.**

United States Court of Appeals,
Second Circuit.

Argued April 24, 1978.

Decided May 24, 1978.

Joseph Kelner, New York City (James Deutsch and Gilbert S. Glotzer, New York City, on brief) for plaintiff-appellee-cross-appellant.

Jan F. Constantine, Asst. U. S. Atty., Eastern District of New York, Brooklyn, N. Y. (David G. Trager, U. S. Atty., Alvin A. Schall, Harvey M. Stone and Edward S. Rudofsky, Asst. U. S. Attys., Brooklyn, N. Y., on briefs), for defendant-appellant-cross-appellee.

Before LUMBARD, MULLIGAN and TIMBERS, Circuit Judges.

PER CURIAM:

On this appeal from a judgment of $600,-000 awarded to Robert A. Lennon for severe injuries suffered as a result of medical malpractice at the St. Albans Naval Hospital during 1972, the United States has conceded liability. We are, therefore, concerned only with the amount of the award and with the adequacy of the findings of the trial judge, sitting without a jury, on damages. Both parties are appealing the judgment, Lennon contending that the award is too low and fails adequately to compensate him for loss of future earnings, and the government asserting that the award is excessive.

Lennon, a veteran of the Marines, was involved in a serious motor vehicle accident in 1972, at the age of 21. His leg badly fractured, Lennon was treated at St. Albans, where he developed osteomyelitis. Judge Costantino found that insufficient cultures were taken of Lennon's wound; that improper antibiotics were administered; and that Lennon himself was per-

mitted to care for his wound at far too early a stage in his recovery. Though—as Judge Costantino found—proper treatment began in December of 1972, the osteomyelitis proved to be unarrestable, and Lennon's right leg was amputated in October of 1974.

Evidence was introduced at trial tending to show that Lennon had had ambitions of entering a union apprenticeship program leading to the position of journeyman electrician, and that that possibility had been foreclosed by his injuries. Besides this, there was no specific proof that Lennon would have been able to enter such a program even without his accident, nor did he introduce specific evidence to demonstrate other lost opportunities. Judge Costantino found that Lennon "has proved that the range of jobs available to him is reduced [but] he has not proved that his residual earning capacity has been diminished."

In supplemental findings, dated November 8, 1977, Judge Costantino took note of Lennon's athletic habits prior to his accident, and of the drastic changes caused in his hobbies and in his social life by the amputation; of the great pain accompanying the amputation, including "phantom pain"; of the constant tearing of Lennon's stump due to cellulitis, which prevents Lennon from wearing a prosthesis for extended periods of time; of the possibility of correcting the cellulitis by a stump revision, and of the 50% chance that such a revision would fail and perhaps lead to a loss of the knee; and of future medical expenses of $25,000.

Ordinarily in cases of this sort, we would remand to the trial judge for more detailed findings, allocating damages among loss of earnings, past and future, estimated cost and type of future medical expenses, and past and future pain and suffering, as well as a statement of how the judge arrived at his figures for each class of damages. *See Rapisardi v. United Fruit Co.*, 441 F.2d 1308 (2d Cir. 1971); *Fuchstadt v. United States*, 434 F.2d 367 (2d Cir. 1970); *Moore-McCormack Lines, Inc. v. Richardson*, 295 F.2d 583, 590–91 (2d Cir. 1961), *cert. denied*, 368 U.S. 989, 82 S.Ct. 606, 7 L.Ed.2d 526 *and* 370 U.S. 937, 82 S.Ct. 1577, 8 L.Ed.2d 806 (1962). However, having looked over the entire rec-ord, we believe that to do so in this case would serve no practical purpose.

The award of $600,000 is on the generous side, but viewed on the record as a whole it is not clearly erroneous. There was not enough specific evidence presented to permit the court to award any additional amount for loss of future earnings. Accordingly, we affirm.

LUMBARD, Circuit Judge (dissenting):

I dissent, and vote to reduce the judgment from $600,000 to $300,000. In light of the fact that evidence as to loss of future earnings was nonexistent or highly speculative, and that the trial judge evidently gave plaintiff the benefit of every possible doubt with respect to the future course of his injuries, I believe that the award was excessive, at least to the extent of $300,000.