588 F.2d 355
 Jeffrey MARTIN, an infant by his father and natural
guardian, Howard Martin, and Howard Martin,
Individually, Plaintiffs-Appellees,
v.
THE MAINTENANCE CO., INC., the City of New York,
Defendants-Appellants- Appellees,
and
Metropolitan Baseball Club, Inc., New York Mets National
League Baseball Club d/b/a New York Mets,
Defendant-Appellant,
and
Otis Elevator Co., Defendant-Appellee.
 Nos. 53, 55 and 56, Docket Nos. 78-7157, 78-7162 and 78-7211.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 16, 1978.
Decided Dec. 5, 1978.
 
 Benjamin Vinar, New York City (Siff & Newman, P. C., New York City, Thomas R. Newman, and Norman Landau, New York City, of counsel), for plaintiffs-appellees.
 Bernard Burstein, New York City (Corp. Counsel of the City of New York, Allen G. Schwartz, L. Kevin Sheridan, and David Jacobs, New York City, of counsel), for appellant, The City of New York.
 Morris Zweibel, Mineola, N. Y. (Crowe, McCoy, Agoglia, Fogarty & Zweibel, P. C., Mineola, N. Y., Patrick J. Fogarty, New York City, of counsel), for defendant-appellant-appellee, The Maintenance Co., Inc.
 Richard Bakalor, New York City (McLaughlin, Simone & Lawlor, New York City, James A. Magee, New York City, of counsel), for defendants-appellants, Metropolitan Baseball Club, Inc., New York Mets National League Baseball Club d/b/a New York Mets.
 Sidney Schwartz, New York City (Alexander, Ash, Schwartz & Cohen, New York City, James B. Reich, New York City, of counsel), for defendant-appellee, Otis Elevator Co.
 Before LUMBARD, FRIENDLY and OAKES, Circuit Judges.
 PER CURIAM:
 
 
 1
 This action, wherein federal jurisdiction was predicated on diverse citizenship, 28 U.S.C. § 1332(a), was brought by Jeffrey Martin and his father, Howard Martin, both residents of New Jersey, against the City of New York, its maintenance contractor, The Maintenance Co., Inc. (Mainco), Otis Elevator Company, and the New York Mets to recover damages for a serious injury which 10-year old Jeffrey suffered when his right foot became wedged while he was descending an escalator, manufactured by Otis and maintained by Mainco, at Shea Stadium during the seventh inning of a Mets baseball game. There could, of course, have been no conceivable prejudice on the part of a New York judge or jury against this unfortunate youth, and it must have been apparent from the outset that the case would involve serious questions of the division of responsibility among the defendants an area of tort law which the New York Court of Appeals has been transforming in a series of important decisions over the last two decades.[1] The judge dismissed Otis during the course of the trial. After a verdict in favor of the plaintiffs, the judge instructed the jury to apportion the liability among the three remaining defendants. The jury found the proper proportions to be 20% For the City, 40% For Mainco, and 40% For the Mets. In a post-trial opinion, the judge ordered a new trial on damages with respect to Howard Martin unless he filed a remittitur reducing these from $50,000 to $30,000, which he did, and dismissed the Mets' cross-claim for indemnification against the City and/or Mainco, and the City's cross-claim for indemnification against Mainco. On appeal Mainco and the Mets advance feeble claims with respect to the judgments in favor of plaintiffs but they and the City devote their efforts mainly to their internecine quarrels.
 
 
 2
 We have carefully considered all of appellants' contentions and conclude that, with one exception, namely, the City's claim for indemnity against Mainco, they are without merit. The claims of insufficiency of evidence on the part of Mainco and the Mets border on the frivolous. There had been a long history of incidents like Jeffrey's on the Shea Stadium escalators. Often the only damage was the loss of a sneaker that was trapped between the treads and the side skirts of a downward-moving escalator two of these within the month before Jeffrey's accident on the same escalator he was descending. Two months before Jeffrey's injury a 12-year old boy had his sneaker trapped in the same escalator and required hospitalization. This and more were known to all three defendants. Yet at the time when Jeffrey descended there were no guards stationed at the escalators to warn sneaker wearers or to push the button that would have shut down the escalator and avoided serious injury, and no tools on hand to provide for a victim's speedy release. Admission of photographs of the condition of Jeffrey's foot immediately after the accident was within the trial court's discretion and the $350,000 award for an injury which required amputation of four toes and part of his foot, with repeated surgery and more to come, was not excessive. Although the City's lease to the Mets required the City to maintain and repair the electrical systems of the stadium, we find nothing in the New York cases that would support the Mets' claims for indemnification by the City or Mainco.
 
 
 3
 Although, in seeking indemnity against Mainco, the City relies on both contract indemnity and "common law indemnity", a principle which, as held in Rogers v. Dorchester Associates, 32 N.Y.2d 553, 563, 347 N.Y.S.2d 22, 30, 300 N.E.2d 403 (1973), has survived the repudiation in Dole v. Dow Chemical Co., 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972), of the rule of no contribution among joint tortfeasors in favor of one of apportionment, we need concern ourselves only with the former. In its contract with the City to maintain the Shea Stadium escalators Mainco agreed as follows:
 
 
 4
 The Contractor will indemnify and save harmless the Department of Parks and/or the City for any damages or costs to which the Department of Parks and/or City may be put by reason of injury to the person or property of another resulting from the negligence or carelessness in the performance of the contract or in the failure to comply with any of the provisions of the contract.
 
 
 5
 The verdict against Mainco settled that the City was being put to damages by reason of injury to the person of Jeffrey Martin resulting from Mainco's "negligence or carelessness in the performance of its contract", a conclusion which the evidence fully warranted. But the verdict also established that the City had breached its duty of care to Jeffrey.[2] The district judge held that under these circumstances the indemnity clause did not meet the test laid down by Judge L. Hand in Mostyn v. Delaware, L. & W. R. Co., 160 F.2d 15, 19 (2 Cir. 1947), applying New York law, that "if the indemnitee means to throw the loss upon the indemnitor for a fault in which he himself individually shares, he must express that purpose beyond any peradventure of a doubt."[3]
 
 
 6
 The City concedes that Judge Hand's formulation was a correct application of New York law as the decisions, notably Thompson-Starrett Co. v. Otis Elevator Co., 271 N.Y. 36, 2 N.E.2d 35 (1936), which he cited, 160 F.2d at 19 n. 9, then stood, and that Mainco's covenant would not pass the "beyond peradventure of a doubt" test. However, it submits that, beginning with Kurek v. Port Chester Housing Authority, 18 N.Y.2d 450, 276 N.Y.S.2d 612, 223 N.E.2d 25 (1966), the Court of Appeals has turned away from Thompson-Starrett. In Kurek, Judge Keating held that even "active" negligence by the indemnitee did not preclude recovery under a contract indemnifying against claims and damages of third parties "of whatsoever kind or nature." Levine v. Shell Oil Co., 28 N.Y.2d 205, 210, 321 N.Y.S.2d 81, 84, 269 N.E.2d 799, 801 (1971), extended Kurek to a case where the indemnity was "against any and all claims, suits, loss, cost and liability . . . ." After citing Thompson-Starrett and Kurek, Judge Scileppi questioned "the judicial feasibility of a rule which allows a court to conclude that where a contract provides that indemnification will be for any and all liability, the parties must have meant something else", 28 N.Y.2d at 211, 321 N.Y.S.2d at 85, 269 N.E.2d at 802, and pronounced that Thompson-Starrett was "no longer a viable statement of the law." The Kurek-Levine principle was applied in Margolin v. New York Life Ins. Co., 32 N.Y.2d 149, 344 N.Y.S.2d 336, 297 N.E.2d 80 (1973), on a state of facts somewhat resembling that here except that the indemnity clause was "for any and all damage or injury of any kind or nature . . ."; the Court held it was necessary only "that the intention to indemnify (an indemnitee who was also negligent) can be clearly implied from the language and purposes of the entire agreement, and the surrounding facts and circumstances", 32 N.Y.2d at 153, 344 N.Y.S.2d at 339, 297 N.E.2d at 82.[4] Finally, in Hogeland v. Sibley, Lindsay & Curr Co., 42 N.Y.2d 153, 397 N.Y.S.2d 602, 366 N.E.2d 263 (1977), the Court of Appeals allowed recovery by a negligent lessor on an indemnity "from and against all claims of whatever nature arising from any act, omission or negligence of the Tenant . . . or rising from any accident . . . whatsoever caused to any person . . . in or about the Tenant's demised premises . . . where such accident . . . results . . . from an act or omission on the part of Tenant", 42 N.Y.2d at 156-57, 397 N.Y.S.2d at 604, 366 N.E.2d at 265. The Court again repudiated the "unequivocal terms" criterion of Thompson-Starrett and, citing Levine and Margolin, stated that "we now look to the 'unmistakable intent of the parties' rather than the semantic stereotypes with which an agreement may be phrased", 42 N.Y.2d at 159, 397 N.Y.S.2d at 606, 366 N.E.2d at 266.
 
 
 7
 While the Court of Appeals has not yet allowed indemnity to a negligent indemnitee on a clause precisely like that in the contract between the City and Mainco, we think it would now do so if the issue were presented. At least that is true in a case like this where the City's negligence lay only in its failure properly to police the performance of Mainco under the contract[5] and of the Mets under the lease[6] and to give the warnings or take other corrective steps which were required as a result of Mainco's and the Met's manifold neglects. We perceive no difference, as a matter of ordinary English speech, between the "any" of the City's contract with Mainco and the "any and all" of Levine or the "all" of Murray, see fn. 4. We likewise find no significance in the absence of such declamatory words as "whatever", "whatsoever", etc., which add nothing to what the language means without them.[7] Today good draftsmanship is thought to lie in using as few words as possible not, as once was believed, as many. To insist on such gossamer distinctions as Mainco urges would constitute the very use of "semantic stereotypes" which the Court of Appeals condemned in Hogeland and would maintain a kind of wraith-like after-life for Thompson-Starrett eight years after its demise had been pronounced in Levine. The contract between the City and Mainco was negotiated five years after the decision in Kurek and several months after that in Levine. If the parties intended to exclude indemnity by Mainco when the City had also been negligent, it would have been easy enough to express this, either by saying so, see Hogeland, supra, 42 N.Y.2d at 159, 397 N.Y.S.2d at 606, 366 N.E.2d 263, or by inserting "solely" or "exclusively" after the word "resulting." It is, of course, unfortunate that Mainco has no redress if our prediction should turn out to be wrong, but that is an inevitable consequence of diversity jurisdiction and we must do the best we can.
 
 
 8
 So much of the judgment as dismissed the cross-claim of the City against Mainco is reversed and the cause is remanded for further proceedings with respect to the cross-claim consistent with this opinion. Plaintiffs-appellees may recover costs on appeal against all appellants, to be paid in the same proportions as fixed by the judgment of the District Court. The City may recover its costs on appeal against Mainco and the Mets, each to pay equally. No other costs.
 
 
 
 [1]
 The most important cases are DeClara v. Barber S. S. Lines, 309 N.Y. 620, 132 N.E.2d 871 (1956); Moore v. Suburban Fuel Oil Service Co., 16 N.Y.2d 647, 261 N.Y.S.2d 82, 209 N.E.2d 122 (1965), affg. 22 A.D.2d 827, 255 N.Y.S.2d 230 (1964); Kurek v. Port Chester Housing Auth., 18 N.Y.2d 450, 276 N.Y.S.2d 612, 223 N.E.2d 25 (1966); Potter v. Furniture Manufacturers Bldg., Inc., 26 N.Y.2d 269, 309 N.Y.S.2d 904, 258 N.E.2d 196 (1970); Levine v. Shell Oil Co., 28 N.Y.2d 205, 321 N.Y.S.2d 81, 269 N.E.2d 799 (1971); Dole v. Dow Chemical Co., 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972); Margolin v. N. Y. Life Ins. Co., 32 N.Y.2d 149, 344 N.Y.S.2d 336, 297 N.E.2d 80 (1973); Rogers v. Dorchester, 32 N.Y.2d 553, 347 N.Y.S.2d 22, 300 N.E.2d 403 (1973); Putnam v. Stout, 38 N.Y.2d 607, 381 N.Y.S.2d 848, 345 N.E.2d 319 (1976); and Hogeland v. Sibley, Lindsay & Curr Co., 42 N.Y.2d 153, 397 N.Y.S.2d 602, 366 N.E.2d 263 (1977). The briefs cite 91 New York cases as well as a number of federal cases endeavoring to interpret New York law
 
 
 [2]
 The City was liable under the principles described in two different sections of the Restatement of Torts 2d, §§ 357 and 359 (1965). Section 357 relates to cases where the lessor has covenanted to repair but has failed to exercise reasonable care to perform his obligation (here to see that it was performed by Mainco). This rule was explicitly adopted by the New York Court of Appeals in Putnam v. Stout, supra, 38 N.Y.2d at 617, 381 N.Y.S.2d at 854, 345 N.E.2d 319. Section 359 makes a lessor who leases land for a purpose which involves admission of the public liable if he knows or by the exercise of reasonable care could discover a condition involving an unreasonable risk of harm, which the lessee is failing to remedy, and fails to exercise reasonable care here primarily by warnings to protect the public. See Junkermann v. Tilyou Realty Co., 213 N.Y. 404, 108 N.E. 190 (1915) (Cardozo, J.); Marshall v. Mastodon, Inc., 51 A.D.2d 21, 379 N.Y.S.2d 177 (1976)
 
 
 [3]
 Judge Hand acknowledged that "as a new question it is perhaps possible to come to the opposite conclusion" but thought that recent New York decisions, departing from earlier ones, see 160 F.2d at 19, which had granted indemnity under the usual indemnity clause despite some negligence of the indemnitee, were authoritative against this
 
 
 [4]
 In the interval between Levine and Margolin, the Appellate Division for the Fourth Department sustained a third party complaint in a case where an "actively" negligent indemnitee sought to recover on an indemnity against "all loss, liability, damage, cost and expenses whatever arising from, or as a result of this lease." Murray v. Rupp Rental Corp., 39 A.D. 637, 332 N.Y.S.2d 552, 554 (1972)
 
 
 [5]
 Indeed one of plaintiffs' claims against the City was that it should have discharged Mainco because of the latter's poor performance in maintaining the escalators
 
 
 [6]
 The verdict, assessing only 20% Of the liability against the City, is an illustration of jury common-sense
 
 
 [7]
 While we would not willingly forego W. S. Gilbert's "No probable, possible shadow of doubt, No possible doubt whatever" in song, a draftsman could convey the same meaning by a simple "no doubt."