599 F.2d 36
 Robert J. GIBBS and Theresa Gibbs, Plaintiffs-Appellees,
v.
UNITED STATES of America, Defendant-Appellant.
UNITED STATES of America, Third-Party-Plaintiff-Appellant,
v.
EDWARD D. KEARNEY CO., INC., Third-Party-Defendant-Appellee.
 No. 846, Docket 79-6007.
 United States Court of Appeals,
Second Circuit.
 Argued April 26, 1979.
Decided May 23, 1979.
 
 Mary C. Daly, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty. S. D., Michael H. Dolinger, Asst. U. S. Atty., New York City, of counsel), for defendant-appellant and third-party plaintiff-appellant, United States of America.
 Melvin Katz, New York City (Lester, Schwab, Katz & Dwyer, Steven B. Prystowsky, New York City, of counsel), for plaintiffs-appellees, Robert J. Gibbs and Theresa Gibbs.
 Michael P. Capriano, New York City (Capriano & Lichtman, New York City, of counsel), for third-party defendant-appellee, Edward D. Kearney Co., Inc.
 Before WATERMAN, FEINBERG and MANSFIELD, Circuit Judges.
 FEINBERG, Circuit Judge:
 
 
 1
 This is an appeal by the United States from a judgment of $149,593.93 for plaintiff Robert J. Gibbs in an action brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq., after a nonjury trial before Judge Kevin T. Duffy in the United States District Court for the Southern District of New York. The government also appeals from the dismissal of its third-party action for indemnity against Edward D. Kearney Co., Inc. We affirm the judgment for plaintiff, but reverse the dismissal of the third-party complaint and direct entry of judgment in favor of the United States on its indemnity claim.
 
 
 2
 * This case arises from an unfortunate accident which caused plaintiff to suffer serious steam burns. The facts, as justifiably found by the district judge, are as follows. Plaintiff was at all relevant times a steam fitter and employee of Kearney, the third-party defendant. Kearney had a contract with the United States Postal Service to modernize a steam reducing station in the sub-basement of the post office located at 90 Church Street, New York, New York. The reducing station converted high pressure steam supplied by Consolidated Edison to a useable pressure for the hot water, heating and air conditioning systems of the building. Plaintiff and other nongovernment workers in the area complained almost daily to the Superintendent of Building Maintenance, Richard Rowley, about "oppressive" working conditions in the subbasement, chiefly due to leakage of steam from virtually every pipe and the discharge of excess steam from flash tanks positioned on the ceiling.
 
 
 3
 To remedy the high temperatures in the work area, it was suggested that a vent line be run from one of the flash tanks out of the station area. On October 14, 1975, Rowley directed Pablo Galindez, a post office employee, to construct the vent line, but did not instruct him on the particulars. Galindez, classified by the Postal Service as a plumber, had never worked on or vented such a system. The bulk of his plumbing experience consisted of maintaining the lavatory facilities at 90 Church Street. The vent line as constructed was a series of elbows and joints, and no relief valves were placed on it. There was testimony that plaintiff, who was working in the area during construction of the vent line, gave some advice to Galindez on where the line should run, and assisted in the construction in a minor way.
 
 
 4
 On October 16, the day after the vent line was installed, plaintiff entered the reducing station, and within minutes an explosion occurred. The escaping steam severely scalded plaintiff. He was rushed to Beekman Downtown Hospital where he remained until October 25, suffering from first and second degree burns covering 10 percent to 15 percent of his body, including his eyes, face, arms and groin area. In January 1976, plaintiff returned to work on a light duty basis, and by February was performing his normal duties as a steam fitter.
 
 
 5
 Plaintiff commenced this action against the United States under the Federal Tort Claims Act, alleging that the explosion was caused by the negligence of Postal Service employees. The United States then commenced a third-party action against Kearney premised upon an indemnification clause in the contract between Kearney and the Postal Service.
 
 
 6
 After a nonjury trial, Judge Duffy found that Galindez was ignorant of the mechanics of the steam reducing station, that Rowley was aware of such ignorance and made no effort to remedy it, that the negligence of these two Postal Service employees in improperly installing the vent line was the proximate cause of the explosion resulting in plaintiff's injuries, and that plaintiff was 15 percent contributorily negligent. No party now challenges any of those findings. The district court also found
 
 
 7
 plaintiff's special damages, including hospital expenses, medical expenses and loss of earnings, to be $5,992.85 . . . (, and also that) plaintiff is entitled to recover $170,000 for conscious pain and suffering resulting from this incident.
 
 
 8
 Judgment was ultimately entered in the amount of $149,593.93, reflecting the reduction of plaintiff's total damages by 15 percent, the percentage of fault attributable to him.
 
 
 9
 In the third-party action, the district court construed the indemnity clause in the contract between Kearney and the Postal Service as requiring Kearney to indemnify the government for all liability arising from the incident except to the extent attributable to the government's own negligence. Since plaintiff only recovered 85 percent of his damages, the percentage of negligence attributed solely to the United States, none of the government's liability was covered by the indemnity clause. Therefore, the third-party complaint was dismissed.
 
 
 10
 On appeal, the government does not contest the determination of its liability to the plaintiff. It does argue, however, that the award of $175,992.85 (before reduction for plaintiff's negligence) is unsupported by detailed findings of fact as required by Fed.R.Civ.P. 52(a), that in any event the award is excessive, and that the indemnity provision was wrongly construed as excluding indemnification by the contractor for the government's negligence.
 
 II
 
 11
 The district court's opinion was quite cursory in specifying the basis for the damage award. The opinion lumped hospital and medical expenses together with lost earnings for a total of $5,992.85, and awarded $170,000 for "conscious pain and suffering." The government argues, citing among other cases Lennon v. United States, 579 F.2d 12 (2d Cir. 1978); Fuchstadt v. United States, 434 F.2d 367 (2d Cir. 1970), that under Fed.R.Civ.P. 52(a) the district court was required to make
 
 
 12
 detailed findings, allocating damages among loss of earnings, past and future, estimated cost and type of future medical expenses, and past and future pain and suffering, as well as a statement of how the judge arrived at his figures for each class of damages.
 
 
 13
 Lennon, supra, 579 F.2d at 13.
 
 
 14
 This is not a case, however, in which appellate review of the judgment is impossible due to lack of specificity in the district court's findings. Compare Hatahley v. United States, 351 U.S. 173, 182, 76 S.Ct. 745, 100 L.Ed. 1065 (1956); Newburger, Loeb & Co., Inc. v. Gross, 563 F.2d 1057, 1081 (2d Cir. 1977), cert. denied, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978); Lemelson v. Kellogg Co., 440 F.2d 986, 988 (2d Cir. 1971). The basis of the award is apparent from the record. The $5,992.85 figure, as the government points out in its brief, is the sum of the items claimed as special damages by the plaintiff as listed in the Pre-Trial Order:
 
 
 15
 Hospital expenses $1,342.85 Medical expenses 250.00 Loss of earnings 4,400.00
 
 
 16
 As for the conscious pain and suffering award, here too the basis is clear in the record. The physical pain of the burns and the treatment for them was obviously severe. And despite plaintiff's recovery and return to work, there are still some residual effects. In this particular case then, a remand for specification of the basis of the damage award would serve no practical purpose. We note, however, that even where the basis of the award is apparent from the record, the district court should specify the basis for damages in detail in the findings of fact, which, if nothing else, avoids confusion as well as unnecessary litigation on appeal.
 
 
 17
 The government argues that the award for pain and suffering is excessive. Without detailing here the testimony concerning the treatment for plaintiff's burns, some of them in the genital area, and the accompanying excruciating pain, and keeping in mind that measuring pain and suffering in dollars is inescapably subjective, Moore-McCormack Lines, Inc. v. Richardson,295 F.2d 583, 587 (2d Cir. 1961), cert. denied, 368 U.S. 989, 82 S.Ct. 606, 7 L.Ed.2d 526 (1962), it suffices to say that the award, though generous, is not so high as to shock the judicial conscience. Nor is it a denial of justice to permit the award to stand. See Zarcone v. Perry, 572 F.2d 52, 56-57 (2d Cir. 1978); Dagnello v. Long Island Railroad Co., 289 F.2d 797, 806 (2d Cir. 1961). It is clear that the district judge's determination, as trier of fact, is not without support in the record and is not an abuse of discretion. See Grunenthal v. Long Island Railroad Co., 393 U.S. 156, 160-61, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968). We therefore do not disturb the judgment for plaintiff against the United States.
 
 III
 
 18
 Having affirmed the judgment for plaintiff, we must now consider whether the district judge correctly construed the indemnity clause in the contract between the Postal Service and plaintiff's employer, Kearney, as excluding any obligation to indemnify the government to the extent that the plaintiff's claim is founded on the government's negligence. Clause 18 of the contract, placed beneath the heading, "INDEMNIFICATION" in bold type, reads as follows:
 
 
 19
 The Contractor shall save harmless and indemnify the Postal Service and its officers, agents, representatives, and employees from all claims, loss, damage, actions, causes of action, expense and/or liability resulting from, brought for, or on account of any personal injury or property damage received or sustained by any person, persons, or property growing out of, occurring, or attributable to any work performed under or related to this contract, regardless of whether such claims, loss, damage, actions, cause of actions, expense and/or liability may be attributable to the fault, failure, or negligence of the Contractor.
 
 
 20
 The starting point for analysis is United States v. Seckinger, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970), which established that federal law controls the interpretation of contracts between the government and private contractors. Id. at 209, 90 S.Ct. 880. In Seckinger, the contract clause at issue provided that the contractor "shall be responsible for all damages to persons or property that occur as a result of his fault or negligence in connection with the prosecution of the work." Id. at 208 n.9, 90 S.Ct. at 883 n.9. The Court held that this clause required indemnity from the contractor on a comparative negligence basis for injury claims arising from the contract work. Id. at 215, 90 S.Ct. 880. In other words, the government could obtain indemnity from the contractor for that percentage of the government's liability to a tort claimant that corresponded to the percentage of the contractor's fault in contributing to the injury. But the government could not, under that clause, obtain indemnity for that percentage of its liability to the claimant attributable to the government's own negligence.
 
 
 21
 In the course of the opinion, Justice Brennan wrote that to interpret an indemnity clause as requiring a government contractor to indemnify the government for the Government's negligence, the court should be "firmly convinced that such an interpretation reflects the intention of the parties," which "should appear with clarity from the face of the contract." Id. at 211, 212, 90 S.Ct. at 885. Yet, the Court noted, the contract need not expressly provide for the case of the indemnitee's negligence:
 
 
 22
 We specifically decline to hold that a clause that is intended to encompass indemnification for the indemnitee's negligence must include an "indemnify and hold harmless" clause or that it must explicitly state that indemnification extends to injuries occasioned by the indemnitee's negligence.
 
 
 23
 Id. at 213 n.17, 90 S.Ct. at 886 n.17.
 
 
 24
 We reluctantly conclude that this language is dispositive of the interpretation of the clause before us. First, the clause contains the terms, "save harmless and indemnify," which, as Justice Brennan indicated, do help show an intent to encompass indemnification for the indemnitee's negligence. Second, the clause obligates the contractor to indemnify the government for "all claims, . . . resulting from . . . any personal injury . . . growing out of . . . any work performed under or related to this contract . . . ," which on its face covers the plaintiff's claim here.[1] There are no express exceptions to the broad language. And further, such liability for indemnity exists "regardless of whether such claims . . . may be attributable to the fault, failure, or negligence of the contractor." Apart from an explicit requirement of indemnification for the indemnitee's negligence, it is hard to imagine any language stronger for the indemnitee than that contained in the instant clause. Were we writing on a clean slate, we would find attractive the view that only such an explicit reference could support indemnification for the indemnitee's negligence, particularly because of the usual disparity in bargaining power between the government and its contractors, and the government's role as draftsman of the contract. But Seckinger, as already indicated, makes clear that such explicit reference is not required. Thus, we feel compelled to hold that the intention of the parties to require Kearney to indemnify the government for the negligence of the Postal Service "appear(s) with clarity from the face of the contract," under the applicable federal common law.
 
 
 25
 The result reached here also seems required by prior cases in our circuit dealing with indemnification clauses, though not involving the federal government as indemnitee. These decisions have construed broad and general indemnity clauses like the one before us as requiring indemnification for the indemnitee's negligence. See Martin v. Maintenance Co., Inc., 588 F.2d 355 (2d Cir. 1978) (applying New York law in construing the following: "The Contractor will indemnify and save harmless the Department of Parks and/or the City for any damages or costs to which the Department of Parks and/or City may be put by reason of injury to the person or property of another resulting from the negligence or carelessness in the performance of the contract or in the failure to comply with any of the provisions of the contract."); Capozziello v. Brasileiro, 443 F.2d 1155 (2d Cir. 1971) (applying federal admiralty law in construing the following: "Contractor will . . . indemnify and save harmless the Owner against any loss . . . or injury . . . arising or resulting from the performance of this contract . . . ."). It should be noted that the language in Martin is considerably weaker for the indemnitee than the clause now before us.
 
 
 26
 These decisions in our own circuit are in accord with the weight of authority in other lower courts, which have consistently interpreted broad and general indemnification clauses as encompassing claims arising from the indemnitee's negligence, whether the indemnitee is the federal government, see Smith v. United States, 497 F.2d 500 (5th Cir. 1974); see also United States v. Hollis, 424 F.2d 188 (4th Cir. 1970), or not, see Brown v. Seaboard Coast Line Ry. Co., 554 F.2d 1299 (5th Cir.), cert. denied, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977); Mississippi Power Co. v. Roubicek, 462 F.2d 412 (5th Cir. 1972); Moses-Ecco Co. v. Roscoe-Ajax Corp., 115 U.S.App.D.C. 366, 320 F.2d 685 (1963). Indeed, the language of the indemnity clause in the instant case is at least as strong for the indemnitee as in the cases just cited.
 
 
 27
 It is true that in two recent cases, the 9th Circuit refused to require indemnity for the government's negligence, but both rested on contractual language distinguishable from that involved here. In United States v. English, 521 F.2d 63, 67 (9th Cir. 1975), the indemnity clause on its face only covered negligence attributable to the contractor. In Howey v. United States, 481 F.2d 1187 (9th Cir. 1973), Judge Lumbard of this court, sitting by designation, specifically noted that in the clause there at issue, unlike here, the "word 'indemnify' commonly used to express the legal relationship the government seeks to establish vis-a-vis (the Subcontractor) is lacking." Id. at 1192. Further, the relevant language there was placed under the heading "Insurance-Liability to Third Persons," which indicated that liability might be imposed only if proper insurance was not procured.
 
 
 28
 The foregoing doubtless makes clear that we are not enthusiastic about allowing the government to recover from a much less blameworthy contractor for liability to a third party based solely on the government's negligence.[2] Nevertheless, for the reasons already given, we conclude that this result is required by the cases discussed above. In sum, we affirm the judgment for plaintiff in the main action, but reverse the dismissal of the third-party complaint and direct entry of judgment in that action in favor of the United States against Kearney.
 
 
 
 [1]
 The construction of the vent line was in direct response to complaints regarding working conditions in the steam reducing station by plaintiff and other nongovernment workers, who were performing the work that was the subject of the contract between Kearney and the Postal Service. The vent line was constructed in the work area contemporaneously with the contract work, and would not have been constructed but for that contract work. It would therefore be unreasonable to say that the vent line construction (and resulting explosion) was not "related to this contract." Thus the indemnity clause is applicable to this personal injury claim liability
 
 
 [2]
 Since the judge found plaintiff, who was Kearney's employee, 15 percent contributorily negligent and reduced the verdict against the government accordingly, plaintiff's judgment against the government for which it seeks indemnity was based solely upon the government's negligence