**Betty M. ZETEK**

v.

**UNITED STATES of America, et al.**

**Civ. A. No. 80–1220.**

United States District Court,
E. D. Pennsylvania.

June 26, 1981.

S. Robert Levant, Philadelphia, Pa., for plaintiff.

Rachel Shao, Asst. U. S. Atty., Philadelphia, Pa., for defendant U. S.

Philip A. Ryan, German, Gallagher & Murtagh, Philadelphia, Pa., for third party defendant Cuisine Limited.

## MEMORANDUM

GILES, District Judge.

Plaintiff, Betty Zetek, a cafeteria employee of Cuisine Limited, third party defendant, commenced this action against defendant, United States of America, pursuant to the Federal Tort Claims Act. 28 U.S.C. §§ 2671–2680. She sustained injuries on April 5, 1977 on the property of the Post Office in the cafeteria kitchen operated by Cuisine when a shelving unit fell in a walk-in refrigerator on which Cuisine goods were stacked. The United States impleaded Cuisine and has now moved for summary judgment, asserting that there is no genuine issue as to any material fact and, further, that the United States is entitled to judgment in its favor as a matter of law because its contract with Cuisine contains a full indemnity clause. The United States asserts that the contract language is clear and unambiguous as to Cuisine's duty to indemnify and hold the United States harmless from all claims arising from injuries to persons on the leased premises except where caused by the sole negligence of the United States. It contends that the deposition discovery demonstrates that the injury to plaintiff was caused to some degree by Cuisine's negligence.

Cuisine counters in a cross-motion for summary judgment that the cafeteria contract requires indemnification only for liability arising from its own negligence in the performance of the agreement and argues that to interpret the contract as requiring full indemnity for the United States' negligence would be contrary to public policy. Cuisine argues for invocation of comparative negligence.

Interpretation of an indemnity clause in a government contract is governed by guidelines set forth in *United States v. Seckinger*, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970). Among the general contract principles cited there is the rule that a contract should be construed most strongly against the drafter, the United States. *Id.* at 211, 90 S.Ct. at 885. The Court also adhered to the rule that a contract "should not be construed to permit an indemnitee to recover for his own negligence unless the [trial] court is firmly convinced that such an interpretation reflects the intent of the parties" "clearly and unequivocally." *Id.* at 211, 215, 90 S.Ct. at 885, 887. It also noted that this rule "is particularly applicable to a situation in which there is a vast disparity in bargaining power and economic resources between the parties, such as exists between the United States and particular government contractors." *Id.* at 212, 90 S.Ct. at 885.

Although the Court cited a clause recommended by the American Institute of Architects (AIA) as an example of a valid indemnity provision, it explicitly stated that the example was used for illustrative purposes only, and was not an attempt to identify the specific language required to shift ultimate liability to the indemnitor. *Id.* at 213, n.17, 90 S.Ct. at 886, n.17. The Court stressed that, as with other contracts, "interpretation is largely an individualized process, with the conclusion in a particular case turning on the particular language used against the background of other indicia of the parties' intention." *Id.*

In moving for summary judgment, Cuisine has not proffered any evidence of "other indicia" of the parties' intent beyond a mutual desire to contract. Cuisine voluntarily bid for the very contract about which it now complains. There is no evidence that Cuisine attempted to eliminate or modify the indemnification clause in question. On the other hand, there is evidence that Cuisine, presumably knowingly, accepted the indemnity provision when it executed the contract document. Therefore, the court shall look to the plain language of the contract to determine the intent of the parties with respect to indemnification.

An analysis of the contract language shows "clearly and unequivocally" the parties' intent to shift the responsibility for the United States' negligence to Cuisine in all

situations except where the loss, liability or damage can be said to have resulted solely from the United States' negligence. The clause, in relevant part, states:

> XIV A. The contractor [Cuisine] shall assume all liability for and shall indemnify and save harmless the U.S. Postal Service ... from and against any loss, damage, or injury which may be sustained by any person or persons, whether they be employees, agents, or representatives of the parties hereto, or third persons, as a result of the performance of this agreement .... The contractor shall assume the defense thereof and shall reimburse the U.S. Postal Service ... for any judgments, payments or expenses occasioned to them in connection with claims, demands, or suits of which notice has been given by the U.S. Postal Service.

A literal reading of phrases such as, "shall assume all liability;" "shall indemnify and save harmless;" and "from and against any loss," demonstrates a clear and specific intent to place upon Cuisine, as indemnitor, full responsibility for any and all claims, even where the indemnitee was the only negligent party. It is only subparagraph C of Paragraph XIV which limits Cuisine's duty to indemnify to situations where the liability does not arise from the United States' sole negligence. It reads:

> C. Nothing in this clause shall relieve, or be construed to relieve the U.S. Postal Service, its officers, agents, or employees from any liability growing out of its or their sole negligence, nor shall anything in this clause be construed as an assumption of liability on the part of the contractor for any such negligence.

Similar language was used in the AIA model version cited in *Seckinger*:

> The contractor shall indemnify and hold harmless the owner ... from and against all claims ... arising out of ... the performance of the work, provided that any such claim ... is caused in whole or in part by any negligent act or omission of the contractor, any subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any

of them may be liable regardless of whether or not it is caused in part by a party indemnified hereunder. AIA Document A 201, Sept. 1967.

The only distinction between the AIA provision and that at issue here is that the former includes a specific reference to the fact that the contractor must indemnify the indemnitee regardless of its negligence. However, as the Court stated, that is not determinative:

> We specifically decline to hold that a clause that is intended to encompass indemnification for the indemnitee's negligence must include an "indemnify and hold harmless" clause or that it must explicitly state that indemnification extends to injuries occasioned by the indemnitee's negligence. Thus, ... we assign no talismanic significance to the absence of a "hold harmless" clause.

*Id.* at 213 n.17, 90 S.Ct. at 886 n.17. Although Cuisine suggests that little, if any, significance be attached to either the absence or presence of a "hold harmless" clause, such an interpretation of the Court's language is unwarranted. While neither the absence nor presence of such language is conclusive, the presence of such language certainly warrants considerable weight in construing the parties' intent. To do otherwise would render the Court's use of the AIA example superfluous. In *Smith v. United States*, 497 F.2d 500 (5th Cir. 1974), the Fifth Circuit provided a persuasive analysis of *Seckinger*:

> ... if neither "hold harmless" language or an express disclaimer is required, the negative inference arises that the presence of either is a strong indication that indemnity is intended in spite of or regardless of negligence on the part of the indemnitee.

497 F.2d at 508.

In *Smith* the following indemnity provision was found to have articulated effectively the intent of the parties to require full indemnity for the government's own negligence:

> The contractor shall assume all liability, and hold and save the government ...

harmless for any and all claims for personal injuries . . . or other claims arising out of or in connection with . . . the contract.

*Id.* at 507.

That court held that "the unmistakable nature of the language used in [the] contract" was "sufficiently broad to entitle the government to indemnity notwithstanding its own negligence." *Id.* at 508. As the court found, the indemnity clause closely paralleled the AIA model provision.

If the *Smith* clause can be said to track closely the AIA provision cited in *Seckinger*, the same holds true for the clause in the instant case because it is virtually identical to the clause construed in *Smith.* Both utilize the "save harmless" phraseology and both explicitly state that indemnification will be required for "any loss" sustained by "any person."

In *Gibbs v. United States,* 599 F.2d 36 (2d Cir. 1979), the Second Circuit applied similar reasoning to its interpretation of an indemnity clause before it. That clause provided:

> The contractor shall save harmless and indemnify the Postal Service . . . from all claims . . . resulting from any personal injury or property damage received or sustained by any person . . . attributable to any work performed under or related to this contract, regardless of whether such claims, loss, damage, actions, cause of actions, expense and/or liability may be attributable to the fault, failure or negligence of the contractor.

599 F.2d at 40.

That court held that the above language clearly and unequivocally expressed the parties' intent to require the contractor to indemnify the Postal Service even where, as the court found in *Gibbs,* the contractor was not in any way negligent. That court's analysis closely parallels that in *Smith.* The Second Circuit stated:

> First, the clause contains the terms, "save harmless and indemnify," which as Justice Brennan indicated, do help show an intent to encompass indemnification for the indemnitee's negligence. Second, the

clause obligates the contractor to indemnify the government for "all claims . . . resulting from any personal injury . . . growing out of . . . any work performed under or related to this contract . . . ," which on its face covers the plaintiff's claim here. There are no express exceptions to the broad language. *Id.* at 40.

The controlling contract language to which the *Gibbs* court points is virtually identical to that used in the Cuisine contract. Although the clause in *Gibbs* adds that indemnification will obtain regardless of whether such claims may be attributable to the fault of the contractor, it is apparent from the court's articulation of its rationale that it was merely cumulative and not required under *Seckinger* to accomplish complete indemnity. *Id.* at 41.

The standard outlined in *Seckinger* and the persuasive discussions in the *Smith* and *Gibbs* decisions lead this court to conclude that the language of Paragraph XIV clearly and unequivocally obligates Cuisine to indemnify the United States in all situations where the liability does not result from the government's sole negligence.

The cases in which such an interpretation of an indemnity clause has been rejected are readily distinguishable. The language in those provisions is materially different. For example, in *United States v. English,* 521 F.2d 63 (9th Cir. 1975), the United States' argument that the following clause required the contractor to indemnify the government for its own negligence was rejected.

> The contractor shall without additional expense to the government, be responsible for . . . complying with any applicable laws . . . in connection with the prosecution of the work he shall be similarly responsible <u>for all damages to person or property that occur as a result of his fault of [sic] negligence</u>. (Paragraph No. 12) (emphasis added.)

Additional General Provisions, Paragraph No. 49, provided that:

> The contractor shall hold and save the government . . . free and harmless from

liability of any nature occasioned by *his* operations.

*Id.* at 67 (emphasis added). As the court noted, the underlined portion of Paragraph No. 12 is virtually identical to that rejected in *Seckinger. Id.* at 67 n.2. The phrase "*his* operations" was found to be indicative of the fact that the "save harmless" provision only referred to the contractor's own negligence. There were two possible interpretations: (1) that it was merely a grammatical error and the contract should therefore be read, "*its* operations"—"its" referring to the "government, its officers and agents;" or (2) that "his" referred to the contractor's own negligence. As in *Seckinger,* the second alternative was adopted, applying the principle that a contract must be construed more strongly against the drafter. Also the phrase could not "readily be stretched to encompass the government's negligence as well." 397 U.S. at 211–213, 90 S.Ct. at 885–886.

No such "stretching" of the language in the Cuisine contract is necessary to a finding that the parties agreed that Cuisine would indemnify the United States in all respects except for its sole negligence.

Cuisine argues that even if the language is sufficiently clear and unambiguous to permit the foregoing interpretation, such an interpretation violates public policy. Cuisine asserts that if the United States is indemnified for its own negligence, it will have little incentive to perform its work under the contract in a non-negligent manner, thus placing members of the general public in great danger. Memorandum for Third Party Defendant at 13. Such arguments have been implicitly rejected by the Supreme Court in *Seckinger* and virtually every American jurisdiction. Full indemnity clauses have been permitted as long as they clearly and unequivocally expressed the intent to shift to the contractor all responsibility for any liability arising out of the performance of the agreement. Furthermore, in weighing public policy arguments in relation to government contracts, the following must be considered:

Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of sup-

posed public interests . . . . As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy . . . It is a matter of public importance that good faith contracts of the United States should not be lightly invalidated. Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, this court should not assume to declare contracts . . . contrary to public policy.

*Muschany v. United States,* 324 U.S. 49, 66–67, 65 S.Ct. 442, 451, 89 L.Ed.2d 744 (1945). Cuisine's public policy argument is premised on *supposed* public interests. The assertion is unsupported by legal precedents. As stated above, all the legal precedents approving such clauses are directly contrary to the argument. Cuisine's argument necessarily fails in that regard.

■ However, the United States' motion for summary judgment must be denied in part because there is a genuine issue as to whether Cuisine was negligent to any degree or, conversely, whether the United States was solely negligent. Cuisine's negligence, if any, is governed by state law standards. Pennsylvania has adopted Restatement (Second) of Torts, § 343 (1977). *Atkins v. Urban Redevelopment Authority,* 489 Pa. 344, 414 A.2d 100 (1980). It states in relevant part:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

The United States argues that Cuisine's employees stacked more goods on the

shelves than they should have, thereby causing the shelves to fall. Cuisine denies that the stacking was negligent or the proximate cause of plaintiff's injury since the shelves were not unduly loaded, the United States knew of the extent of shelf use and the United States was solely responsible for maintenance and repair. Cuisine argues that under the facts it is equally plausible that the shelving unit in question fell because it was old and because the Post Office had been unresponsive to Cuisine's requests to improve or replace the shelving units.

The court finds that there are disputed issues of material fact. Accordingly, the United States' motion for summary judgment shall be denied in part and granted in part consistent with this opinion. Cuisine's motion for summary judgment shall be denied.