424 F.2d 188
 UNITED STATES of America, Appellant,
v.
Horace E. HOLLIS, Plaintiff, Charleston Drydock &
Shipbuilding Company, Inc., Elliott T. Halio, Trustee in
Bankruptcy for Charleston Drydock & Shipbuilding Company,
Inc., and Liberty Mutual Insurance Company, Third-Party
Defendants, Appellees.
 No. 13254.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 4, 1969.
Decided March 30, 1970.
 
 Gary H. Baise, Atty., Department of Justice (William D. Ruckelshaus, Asst. Atty. Gen., Robert V. Zener and Ronald R. Glancz, Attys., Department of Justice, and Klyde Robinson, U.S. Atty., on the brief), for appellant.
 Charles H. Gibbs, Charleston, S.C. (Sinkler, Gibbs & Simons, Charleston, S.C., on the brief), for appellees.
 Before SOBELOFF, BRYAN and CRAVEN, Circuit Judges.
 SOBELOFF, Circuit Judge:
 
 
 1
 Charleston Drydock & Shipbuilding Co. contracted with the United States to overhaul the Navy tug YTM-399. Horace E. Hollis, an employee of Charleston Drydock, was injured when he slipped on a drop of oil on the vessel's deckplates as he attempted to lift and move a 75 pound governor, a machine used to synchronize the speeds of the ship's two diesel engines.
 
 
 2
 Hollis brought suit against the United States under the Public Vessels Act, 46 U.S.C. 781. He alleged aggravation of a pre-existing left inguinal hernia discovered two days before the accident. Also he claimed that as a result of the accident he sustained a right hernia. Hollis underwent a number of surgical operations to correct these conditions. The operations, however, were not successful. Moreover, as a result of the operations, one of the plaintiff's testicles atrophied. The nerves and blood vessels into the scrotum were damaged and plaintiff became impotent. The plaintiff attributed his injuries and consequent suffering and disabilities to the unseaworthy condition of the vessel and the negligence of the United States.
 
 
 3
 The United States impleaded Charleston Drydock, plaintiff's employer, and its Trustee in Bankruptcy, as third-party defendants, asserting a right of indemnity for any liability which might arise. The indemnity claim was predicated upon an express provision in the ship repair contract, as well as upon an implied contractual warranty of workmanlike performance. In relevant part the provision is as follows:
 
 
 4
 The Contractor indemnifies and holds harmless the Government * * * against all suits * * * (including, without limitation, * * * personal injury * * *) to which the Government * * * may be subject or put by reason of damage or injury * * * to the property or person of anyone other than the Government, its agencies, instrumentalities and personnel * * * arising or resulting in whole or in part from the fault, negligence, wrongful act or wrongful omission of the Contractor, or any subcontractor, his or their servants, agents or employees; * * *. Such indemnity shall include, without limitation, suits, actions, claims, costs or demands of any kind whatsoever, resulting from * * * personal injury * * * occurring during the period of work on the vessel * * *.
 
 
 5
 In his first order, the District Judge found that the Navy, while repairing the ship's generator, created an unseaworthy condition and was negligent in failing 'to remove or clean up the oil after they knew or should have known that the same had been spilled * * *.' He further found that the 'plaintiff was not negligent in handling the governor singularly' (i.e., alone and without assistance) and 'that the drydock (company) in no way contributed to plaintiff's accident or subsequent injury.' There was, the trial judge concluded, no breach of either the express indemnity provision or the implied warranty of workmanlike performance. Judgment was entered in favor of the plaintiff against the United States only.
 
 
 6
 However, the plaintiff was awarded only $2,750, the court's evaluation of the damage sustained up until the time of plaintiff's first hernia operation. The District Judge was of the view that Hollis had failed to meet his burden of showing a causal connection between the original hernia operation and the later aggravation of the plaintiff's condition.
 
 
 7
 Hollis submitted a post-trial motion seeking an amendment of the order with respect to damages, or a new trial on the damage issue. The court then amended the original order, explaining that it had 'overlooked certain testimony before the South Carolina Industrial Commission * * *' which was submitted at trial. This testimony fully supported Hollis' contention that the aggravation of the left inguinal hernia and other sequelae directly resulted from the accident. The District Judge stated that he had not previously awarded for this injury, 'being under the impression that plaintiff was entitled to an award only for damages from a right inguinal hernia which was proximately and admittedly caused by the accident. Plaintiff had a pre-existing left inguinal hernia before the accident but was able to work and perform normal duties until it was aggravated by the accident.' Taking into account the testimony before the South Carolina Industrial Commission, the court increased the award to $22,750.
 
 
 8
 Still adhering to the original holding that the 'drydock was not guilty of any form of negligence and consequently the entire burden of liability rests with the United States * * *,' the court nevertheless, in determining the amount of damages, later in the same order stated that 'consideration of the fact that plaintiff was guilty of some contributory negligence in doing the lifting is also a part of the court's determination.' As in his original order, the District Judge denied indemnity to the United States against Charleston Drydock.
 
 
 9
 The United States brought this appeal to determine 'whether the district court's finding that plaintiff was contributorily negligent necessarily compels a finding that, with respect to the damage award against it in Hollis' favor, the United States is entitled to indemnity from Charleston Drydock under the latter's express contract of indemnity and also under its implied warranty of workmanlike performance.' The question of indemnity is the only one raised in this court; the appeal does not challenge the $22,750 award finally made in favor of the plaintiff.
 
 
 10
 * Charleston Drydock undertook to indemnify the United States for any damages arising from injury to anyone other than the Government or its employees caused 'in whole or in part' by Charleston Drydock or its employees. Therefore, if the accident resulted from Hollis' negligence in any degree, the United States is entitled to indemnification from his employer.
 
 
 11
 This provision, admittedly broad, is in no way unconscionable. It has long been settled law that a party may expressly agree to be held liable, even if the accident stems solely from the fault of another. See, e.g., Norris, Maritime Personal Injuries 56 at p. 152. The courts have consistently enforced contractual indemnity provisions placing ultimate liability upon an indemnitor, even where the indemnitee's fault also contributed to the loss. Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958); Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); American Stevedores v. Porello,330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011 (1947); Smith v. United States,336 F.2d 165 (4th Cir. 1964); Shenker v. United States, 322 F.2d 622 (2nd Cir. 1963), cert. denied sub nom., American Stevedores, Inc. v. Shenker, 376 U.S. 907, 84 S.Ct. 659, 11 L.Ed.2d 606. Considering the variety of circumstances in which the courts allow recovery for injury to a seaman where the vessel is considered unseaworthy, Weyerhaeuser S.S. Co. v. Nacirema,supra; Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., supra, it is not surprising that the United States, as owner of the vessel, has attempted, through an indemnity provision, to limit its liability in situations where it is not solely at fault.
 
 
 12
 The appellees question whether the terms of the contract are explicit enough to hold them liable where the United States is also negligent. Recently, the Supreme Court has had occasion to consider what language in a contract is needed to hold an indemnitor liable where the indemnitee is at fault. United States v. Seckinger, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (March 9, 1970). Mr. Justice Brennan, speaking for the majority, discussed the suggestion that it was necessary for the United States to include in the contract not only an indemnity clause, but also a 'hold harmless' clause explicitly requiring indemnity even if the United States should be found at fault. In footnote 17 of the opinion, Justice Brennan said:
 
 
 13
 We specifically decline to hold that a clause which is intended to encompass indemnification for the indemnitee's negligence must include an 'indemnify and hold harmless' clause or that it must explicitly state that indemnification extends to injuries occasioned by the indemnitee's negligence. * * * We assign no talismanic significance to the absence of a 'hold harmless' clause.
 
 
 14
 This reasoning accords with the cases previously cited. Therefore, while the contract provision in our case did not include a 'hold harmless' clause, the indemnity provision itself was clear and explicit and stated the contractor's obligation to indemnify the Government for any liability caused 'in whole or in part' by the contractor. This contractual provision clearly meets the requirements of Seckinger.[1]
 
 II
 
 15
 In the circumstances of this case, the indemnity provision would apply only if Hollis, Charleston Drydock's employee, was contributorily negligent. The judge intimated that Hollis was negligent. However, the appellee contends that the findings and conclusions of the District Judge are so inconsistent and irreconcilable with respect to Hollis' negligence that the case should be remanded for clarification of this issue.
 
 
 16
 Manifestly, the District Judge, sitting without a jury, had the authority to amend his original order pursuant to plaintiff's motion. Rule 59, F.R.Civ.P. Appellee's argument is that since the plaintiff's motion to amend was related to the quantum of the damage award, the judge was limited to a consideration of that point and was without authority to amend the order in respect to Hollis' negligence. The argument is without force, for a district judge is not restricted to the modifications suggested by the parties. Rule 59(a) takes a broader view:
 
 
 17
 * * * On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.
 
 
 18
 The rule accords with reason. A district judge should not be forced to perpetuate a finding of fact or conclusion of law which he discovers to be erroneous. United States v. Jacobs, 298 F.2d 469 (4th Cir.1961); Continental Casualty Co. v. American Fidelity & Cas. Co., 186 F.Supp. 173 (S.D.Ill.1959), aff'd, 275 F.2d 381 (7th Cir.1960).
 
 
 19
 However, while there was ample authority to amend the original order, this alone is not dispositive of the issue raised concerning the court's findings in respect to plaintiff's negligence. Still remaining is the fact that in the second and final order itself, there is apparent inconsistency on this question. The District Judge held Charleston Drydock not negligent, notwithstanding the further finding that its employee had been contributorily negligent-- a conclusion which the judge declared he took into account in fixing the amount of the verdict.
 
 
 20
 The United States maintains that the District Judge in fact found Hollis contributorily negligent. It argues that the judge simply repeated verbatim from his original order the findings absolving Hollis and Charleston Drydock from liability. This it would have us treat as a mere inadvertence that should be ignored. Highlighting the finding of contributory negligence in the final order, the United States argues that it is entitled to prevail against the appellee on the question of indemnity.
 
 
 21
 Upon the equivocal state of the record we cannot accept this explanation. We are not free to assume that the findings absolving Hollis and Charleston Drydock were left in the final order as a mere oversight. One cannot say with certainty whether the District Judge found negligence on the part of the plaintiff, but erroneously failed to attribute responsibility for it to his employer or found Hollis free of negligence but erroneously reduced the award.
 
 
 22
 No facts are adduced to support the Government's proposed resolution of the conflicting findings. Where the record presents alternative interpretations, the task should not be imposed on the appellate court of picking and choosing those findings which seem to it preferable. As noted by Judge Brown in Mlandinich v. United States, 371 F.2d 940, 942 (5th Cir.1967),
 
 
 23
 In effect, the parties urge that we pick and choose (the fact findings) to come to conclusions each asserts is required * * *. But this is not our role. It deprecates the function of the trial. Armed with the buckler and shield of F.R.Civ.P. 52(a) * * * as findings come to us, we can perform our limited role only as we know with reasonable assurance just what the Judge has found.
 
 
 24
 As we view the matter, the place to resolve mutually repugnant findings and conclusions is ordinarily in the District Court, not here. If the accident resulted solely from the negligence of the United States, without fault on Hollis' part, then the United States should not be indemnified. On the other hand, if Hollis was contributorily negligent, then the liability must fall on his employer, Charleston Drydock. Therefore the case will be remanded to the District Court for explicit findings clarifying whether or not Hollis was negligent, and to award or withhold indemnity accordingly.
 
 
 25
 Remanded.
 
 
 
 [1]
 As in Shenker v. United States, 322 F.2d 622 (2nd Cir. 1963), cert. denied sub nom., American Stevedores, Inc. v. Shenker, 376 U.S. 907, 84 S.Ct. 659, 11 L.Ed.2d 606, and cases cited therein, it is here unnecessary to consider whether the United States should have been indemnified on the basis of the implied warranty of workmanlike performance, since the express contractual provision allows for indemnity