Viktoria T. **RHOADES** and Donald Rhoades, her husband, Plaintiffs,

v.

**UNITED STATES** of America, Defendant and Third–Party Plaintiff,

v.

R.S. **HOGAN, INC.,** a Maryland corporation, Defendant and Third–Party Defendant.

Civil Action No. 95–616 MMS.

United States District Court, D. Delaware.

Nov. 21, 1997.

Scott E. Chambers of Schmittinger & Rodriguez, Dover, DE, for plaintiffs.

Gregory M. Sleet, U.S. Atty., David A. Green, Asst. U.S. Atty., Willmington, DE, for defendant United States of America.

William J. Cattie, III of Heckler & Cattie, Wilmington, DE, for defendant R.S. Hogan, Inc.

## *OPINION*

· MURRAY M. SCHWARTZ, Senior District Judge.

### Introduction

On October 16, 1995, plaintiffs Viktoria and Donald Rhoades filed a claim against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq. (1997), alleging damages arising out of the Government's negligence during construction work at the Dover Air Force base. On February 15, 1996, the plaintiffs amended their complaint to join R.S. Hogan, Inc. ("Hogan"), the construction contractor, as a defendant. Hogan asserted a cross-claim against the United States on June 17, 1996, and the United States filed a third-party complaint against Hogan on December 20, 1996. On May 23, 1997, the United States filed a motion for summary judgment under Fed.R.Civ.P. 56 contending Hogan must indemnify and defend the United States against all costs and liabilities that might arise from this claim, even if they resulted partially from the government's negligence. On October 31, 1997, the United States moved to amend its complaint to request a declaratory judgment that Hogan must so indemnify the United States.[1] This court has jurisdiction pursuant to 28 U.S.C. § 1331, federal question jurisdiction. For the reasons that follow, summary judgment will be granted with concomitant declaratory relief.

### Statement of Facts

On May 23, 1994, the United States awarded Hogan, a general contractor, an Army–Air Force Exchange Service ("AAFES") contract[2] for renovation and realignment of the main Base Exchange at the Dover Air Force base. D.I. 69 at A–1. The contract contained an indemnification provision stating the contractor would:

indemnify, hold harmless and defend AAFES and all other agencies and instrumentalities of the United States, their agents ... from and against all claims, demands, actions, debts, liabilities, judgments, costs and attorney's fees arising out of, claimed on account of, or in any manner predicated upon loss of or damage to the property of and injuries to ... any and all persons, in any manner caused or contributed to by contractor, his/her agents, servants, or employees, while in, upon or about the military reservation or worksite herein involved, or while going to or departing from the same and to indemnify and hold harmless AAFES, from and on account of damages of any kind which AAFES may suffer as the result of the

1. At oral argument, the court sua sponte raised the question of whether the litigants were seeking an advisory opinion since Rhoades had not yet established liability against either the government or its contractor Hogan. If Rhoades fails to establish either of the defendants is liable for damages or if only Hogan is found liable, any decision on Hogan's duty to indemnify the government will be advisory. In response to the Court's question, the government and Hogan revealed that settlement discussions were frustrated because the parties could not agree on whether the language of their contract shifted monetary responsibility to Hogan for the government's alleged contributory negligence. Further, the parties explained that the obligations of the parties regarding defending litigation efforts and costs were unclear. The parties stressed that an immediate and definitive determination of the legal rights of the parties would settle this dispute and significantly assist the parties in resolving the primary case. Because the record on the indemnification issue was complete and the parties would have suffered a hardship by unnecessarily waiting until the termination of litigation to resolve this issue, the parties agreed the government would amend its complaint to seek declaratory relief. Further, the parties agreed the briefed motions for summary judgment would be deemed applicable to the request for declaratory judgment.

2. The authority for this contract is grounded in federal law. D.I. 69 at A–3.

actions of any of contractor's agents, servants or employees in or about said military reservation or work site.

D.I. 69 at A–3. The contract also contained an insurance clause requiring the contractor to "purchase and maintain ... liability insurance [that named the United States and AAFES as additional and several insureds with respect to claims, demands and expenses arising out of or in connection with any loss, damage or injury resulting from acts or omissions of contractor." *Id.*

According to the contract, the exchange's sales area was to remain operational and open for business during the construction period. *Id.* at A–1. Hogan was to complete the construction work in phases, blocking off work areas while leaving the remaining areas open for customers. *Id.* The contract originally required the construction areas to be partitioned with a plastic drop cloth fastened to a wooden stud wall. D.I. 71 at B–10–11. However, as the number of construction phases increased, so did the cost of these partitions. *Id.* at B–11–13. As a result, Gregory Ashton, the project architect for the Base Exchange Project ("Project"), asked Hogan whether a less expensive means of partitioning could be used. *Id.* at B–11–13, 16. The parties eventually agreed that the plastic drop cloth would simply be hung from the ceiling without any studding. *Id.* at B–11–12, 17. Mr. Ashton approved a change in the AAFES contract to reflect this agreement. *Id.* at B–12–13, 12–20.

Due to the less secure nature of this partitioning, however, the drop cloths were not as effective at keeping dust from entering the area open to business. D.I. 71 at B–3–6. In response to this problem, Rey Fernandez, the AAFES Base Exchange Manager, instructed Hogan to place rolls of plastic and carpeting along the edge of the drop cloth in order to create a barrier for the dust. *Id.* at B–5–7.

On or about December 7, 1994, plaintiff Viktoria Rhoades was shopping at the Based Exchange and was examining some merchandise on a display rack close to a drop cloth. *Id.* at 27–37. During the construction period, AAFES Base Exchange employees retained responsibility for the placement and display of such racks. D.I. 71 at 18–19, 24. Mrs. Rhoades wanted to view some merchandise on the back side of the rack next to the drop cloth but because of the rack's proximity to the cloth, she could not walk around the rack. *Id.* at 37. As a result, she stopped at the side of the rack and placed one hand on the rack, possibly leaning forward a little bit, to try to view the merchandise on the back side of the rack. *Id.* at 31–35. Shortly thereafter, Mrs. Rhoades fell over the roll of carpet that was along the edge of the cloth. *Id.* at 35–37. Although she could not recall in deposition how much, if at all, the carpet was protruding beyond the hanging cloth, *id.*, she recalled feeling the carpet with her leg before she fell. *Id.* at 33, 36–38.

### Discussion

The dispute between the parties centers around two issues. First, should federal or state law control the interpretation of the indemnification provision. Second, does the indemnification provision require Hogan to indemnify the United States for the government's own negligence if Hogan also caused or contributed to the plaintiff's injuries and resultant damages. The Court will address each of these issues in turn.

### I. *Controlling Law*

The threshold issue is whether state or federal law controls the interpretation of the AAFES contract. The United States argues that because the disputed contract was a government service contract entered into pursuant to authority granted by federal statute, the contract should be interpreted according to federal law. Hogan argues state law governs because the United States elected to file a third-party complaint against Hogan rather than a crossclaim, thereby making the indemnification issue part of the original suit filed by the plaintiff. Hogan asserts that this fact, coupled with the mandate of the Federal Reservation Act of 1928, 16 U.S.C. § 457, compels the application of state law. The Federal Reservation Act states:

[I]n any action brought to recover on account of injuries sustained in any [national park or other place subject to the exclusive

jurisdiction of the United States,] the rights of the parties shall be governed by the laws of the State within the exterior boundaries of which it may be.

16 U.S.C. § 457. Because the Dover Air Force Base is fully contained within the State of Delaware, Hogan asserts Delaware law should control.

In *United States v. Seckinger*, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970), the Supreme Court addressed an indemnification claim by the United States against a contractor. In that case, the United States brought suit against the contractor after the injured party had already received a judgment against the United States. *Id.* at 204–206, 90 S.Ct. at 881–882. When discussing the choice of law issue, the Supreme Court held federal law controlled the interpretation of the contract. *Id.* at 209, 90 S.Ct. at 884. The Court explained the conclusion resulted "from the fact that the contract was entered into pursuant to authority conferred by federal statute and, ultimately, by the Constitution." *Id.* at 209–210, 90 S.Ct. at 884.[3] The Court relied on its prior decision in *United States v. County of Allegheny*, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1944), in which the Court held "[t]he validity and construction of contracts through which the United States is exercising its constitutional functions, their consequences on the rights and obligations of the parties, the titles or liens which they create or permit, all present questions of federal law not controlled by the law of any state." *Id.* at 183, 64 S.Ct. at 913.

■ Although *Seckinger* involved an independent suit by the United States against the contractor, the *Seckinger* Court did not rely on the procedural posture of the case to determine the controlling law. Rather, the court looked to the legal authority on which the contract was based. This interpretation of *Seckinger* is supported by the appellate cases which have applied this *Seckinger* holding to situations in which the indemnification claim was, as in the case at bar, part of the original suit. *See, e.g., Butler v. United States v. Hancock Co.*, 726 F.2d 1057, 1062 (5th Cir.1984); *Gibbs v. United States*, 599 F.2d 36, 38 (2d Cir.1979); *Smith v. United States*, 497 F.2d 500, 502–503 (5th Cir.1974); *United States v. Hollis*, 424 F.2d 188, 189 (4th Cir.1970). In contrast, Hogan has not cited one case which holds that, based on the procedural posture of the case, state law should govern.

■ Even if this Court elected to proceed not based on the legal authority giving rise to the contract but rather on the law underlying the primary case, Hogan could not prevail. The plaintiff's suit in this case is governed by the FTCA, not by the Federal Reservation Act.[4] Although it is clear under the Federal Tort Claims Act that the government's liability to the injured party is determined by state law, *Reo v. United States Postal Service*, 98 F.3d 73, 76 (3d Cir.1996),[5] Hogan has presented no authority stating that the application of state law under the FTCA extends to the interpretation of an indemnification clause in a contract between defendants. Further, *Butler*, 726 F.2d at 1061, and *Gibbs*, 599 F.2d at 37, which apply federal law to the indemnification issue in cases involving summary judgment motions on FTCA actions, provide persuasive authority that state law does not apply. As a result, the Court holds that *Seckinger* applies to the instant case; therefore, federal law will control the disposition of the issues.

---

3. The *Seckinger* Court also mentioned the various federal statutes dealing with the procurement, management, and disposal of government property from which the government had derived authority to enter into the contract. 397 U.S. at 210 n. 13, 90 S.Ct. at 884 n. 13.

4. It is noteworthy that the Federal Reservation Act of 1928 does not appear to have been applied to indemnification claims but rather has simply been employed as another law under which certain tort claims may be brought. *See, e.g. Jenkins v. Whittaker*, 785 F.2d 720, 724 (9th Cir.1986)

(wrongful death action); *Ferebee v. Chevron Chemical Co.*, 736 F.2d 1529, 1533 (C.A.D.C. 1984) (survival action and wrongful death action); *Vasina v. Grumman Corp.*, 644 F.2d 112, 116–117 (2d Cir.1981) (wrongful death action); *Pratt v. Kelly*, 585 F.2d 692, 697 (4th Cir.1978) (wrongful death).

5. The *Reo* court held state law applies to whether "an individual has the legal authority to bind a claimant to an administrative settlement under the FTCA." 98 F.3d at 77.

## II. Interpretation of the AAFES Contract's Indemnification Provision

Relying on *Seckinger*, the United States argues it may shift the responsibility for its own contributory negligence to Hogan as long as the mutual intentions of the parties appear with clarity on the face of the contract. The United States then contends a literal reading of the contract demonstrates a clear and specific intent to place full responsibility for all claims on Hogan as long as Hogan partially contributed to the injury. Hogan asserts the language is ambiguous as to the parties' intent and, under *Seckinger*, such ambiguity precludes finding Hogan liable for the United States' negligence. Hogan also argues there are inconsistencies between the indemnification provision and the insurance provision that confirm ambiguity exists. In addition, Hogan relies on *Seckinger* for the proposition that the Court should be particularly reluctant to impose such liability because of the vast disparity in the bargaining power and economic resources between the parties. As a result, Hogan contends each party should be responsible for its own damages.

In *Seckinger*, the Supreme Court confronted the significance of the following contractual language:

> The contractor shall, without additional expense to the Government, obtain all licenses and permits required for the prosecution of the work. He shall be responsible for all damages to persons or property that occur as a result of *his* fault or negligence in connection with the prosecution of the work.

397 U.S. at 208 n. 9, 90 S.Ct. at 883 n. 9 (emphasis added). In establishing a standard of review, the Court first turned to the general maxim that a contract should be construed against the drafter. *Id.* at 210, 90 S.Ct. at 884.[6] With this framework in mind, the Supreme Court stated that an indemnitee should only be able to recover for his own negligence if a court is "firmly convinced" the parties intended such an outcome. *Id.* at 211, 90 S.Ct. at 885. The policies behind this standard are particularly relevant when the bargaining power and economic resources of the parties vastly differ, as is the case between the United States and certain government contractors. *Id.* at 212, 90 S.Ct. at 885. As a result, the Court held that if the United States intends to shift responsibility for its negligence to a contractor, the mutual intentions of the parties to do so should appear "with clarity from the face of the contract." *Id.* at 212, 90 S.Ct. at 885.

Turning to the language at issue, the Supreme Court held that although it was clear "Seckinger will be responsible for all damages resulting from *its* negligence [, . . . the language was] insufficiently broad to encompass responsibility for injuries resulting from the negligence of the Government." *Id.* at 213, 90 S.Ct. at 885 (emphasis added). Consequently, the most reasonable construction of the clause was that liability would be allocated based on a comparative negligence framework. *Id.* at 215, 90 S.Ct. at 887. The Court considered this holding consistent with the language of the provision and with the "clear and unequivocal" intentions standard. *Id.* at 215–216, 90 S.Ct. at 887–888. Further, the holding would adhere to the principle that when two reasonable interpretations of a contractual provision exist, the provision should be construed less favorably to the party which selected the language, especially when the economic and bargaining leverage of the parties differs significantly. *Id.* at 216, 90 S.Ct. at 888.

As part of its analysis, the Supreme Court provided an example of an indemnification clause that specifically and effectively ad-

---

**6.** In the Court's initial discussion on this issue, it was not completely clear whether the Court would apply this maxim to decide whether a contract is ambiguous or would apply it only to help interpret a contract after it was deemed ambiguous. See 397 U.S. at 210, 90 S.Ct. at 884. Later in the opinion, however, the court provided some clarity on this point and adopted the latter interpretation:

> Finally, our interpretation adheres to the principle that as between two reasonable and practical constructions of an ambiguous contractual provision, . . . the provision should be construed less favorably to that party which selected the contractual language.
> *Id.* at 216, 90 S.Ct. at 887.

dresses the effect of the indemnitee's negligence:

> The Contractor shall *indemnify and hold harmless* the Owner and the Architect and their agents and employees from and against *all claims, damages, losses and expenses* including attorneys' fees arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss or expense (a) is attributable to bodily injury, ... or to injury to or destruction of tangible property... and (b) is caused *in whole or in part* by any negligent act or omission of the Contractor, Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, *regardless of whether or not it is caused in part by a party indemnified hereunder.*

*Id.* at 212 n. 17, 90 S.Ct. at 885 n. 17 (emphasis added). The Court specifically declined, however, to hold that a clause intended to include indemnification for the indemnitee's negligence must contain an " 'indemnify and hold harmless' clause or that it must explicitly state that indemnification extends to injuries occasioned by the indemnitee's negligence." *Id.*

Since the *Seckinger* decision, several appellate courts have decided various contractual provisions were sufficiently clear on their face to demonstrate a mutual intent of the parties to indemnify the government for its own negligence. In *Smith v. United States,* 497 F.2d 500 (5th Cir.1974), the Fifth Circuit Court of Appeals addressed the clarity of the indemnification provision in a case in which all defendants, including the contractor, had been found negligent. *Id.* at 502. The contract stated:

> The Contractor shall assume all liability and *hold and save* the Government, its officers, agents and employees *harmless* for any and all claims for personal injuries, property damages or other claims *arising out of or in connection with the transportation, storage and use of explosives under the contract.*

*Id.* at 506 (emphasis added). The *Smith* court focused on the fact that in *Seckinger,* the clause stated the contractor would indemnify the government for injuries resulting from "his fault or negligence" while the above language referred to "any and all claims" arising out of the contract. *Id.* at 508. The *Smith* court then looked to the model provision presented by the *Seckinger* Court and found significant the fact that, like the model provision, the contractual provision in *Smith* used the phrases "hold harmless," "for any and all claims" and "assume all liability." *Id.* Recognizing the Smith contract did not explicitly refer to indemnification regardless of the indemnitee's negligence, the court stressed the Supreme Court had declined to hold such phrases necessary. *Id.* However, the *Smith* court interpreted the *Seckinger* Court's discussion as implying that a contract which does utilize certain phrases from the model, such as "hold harmless,"

> indicates the intent of the parties for the indemnity to operate despite negligence by the indemnitee. That is to say, if neither 'hold harmless' language or an express disclaimer is required, the negative inference arises that the presence of either is a strong indication that indemnity is intended in spite of or regardless or [sic] negligence on the part of the indemnitee.

497 F.2d at 508. Finally, although the court recognized the contractual maxim favoring the non-drafter and the party of lesser bargaining power, the court decided such principles cannot supplant clear language. *Id.* As a result, the court held the language at issue clearly demonstrated an intent for the contractor to indemnify the government for its own negligence.[7] *Id.*

Similarly, the Second Circuit Court of Appeals confronted a dispute over whether contractual language protected the government from a judgment based on its own negligence. *Gibbs v. United States,* 599 F.2d 36, 38 (2d Cir.1979). The relevant provision read:

> from damages due to the approved work" was clear enough on its face to demonstrate an intent to indemnify the government for its own negligence).

7. *See also Butler, v. United States,* 726 F.2d 1057, 1064–1065 (5th Cir.1984) (relying on the courts discussion in *Smith* and holding that an agreement to "hold and save the United States free

The Contractor shall *save harmless and indemnify* the Postal Service and its officers, agents, representatives, and employees from *all claims, loss, damage, actions, causes of action, expense and/or liability* resulting from, brought for, or on account of any personal injury or property damage received or sustained by any person, persons, or property growing out of, occurring, or attributable to any work performed under or related to this contract, *regardless of whether such claims, loss, damage, actions, cause of actions, expense and/or liability may be attributable to the fault, failure, or negligence of the Contractor.*

*Id.* at 40 (emphasis added). As in *Smith,* the *Gibbs* court discussed the *Seckinger* Court's refusal to require an "indemnify and hold harmless" clause or an explicit statement of indemnification despite the indemnitee's negligence. The *Gibbs* court inferred from the Court's statement that the phrase "save harmless and indemnify," while not dispositive, does "show an intent to encompass indemnification for the indemnitee's negligence." *Id.* at 40. Second, the court focused on "all claims ... resulting from ... any personal injury ... growing out of ... any work performed under or related to [the] contract" and decided this language clearly encompassed the plaintiff's claim. *Id.* Finally, the court noted that, other than *Seckinger's* model language, it was "hard to imagine any language stronger for the indemnitee" than the statement that the contractor bears liability "regardless of whether such claims ... may be attributable to the fault, failure, or negligence of the contractor." *Id.* at 40–41. Consequently, the court held the face of the contract clearly allocated liability for the government's negligence to the contractor. *Id.* at 42.

In *United States v. Hollis,* 424 F.2d 188 (4th Cir.1970), the Fourth Circuit Court of Appeals held the contractor was liable for the negligence of the indemnitee (i.e., the government), as long as the contractor was also negligent to some degree. *Id.* at 192. The court construed the following language:

The Contractor *indemnifies and holds harmless* the Government ... *against all suits* ... including ... personal injury .. to which the Government .. may be subject or put by reason of damage or injury ... to the property or person of anyone other than the Government, its agencies, instrumentalities and personnel ... *arising or resulting in whole or in part from the fault,* negligence, wrongful act or wrongful omission *of the Contractor,* or any subcontractor, his or their servants, agents or employees; ... Such indemnity shall include, without limitation, suits, ... occurring during the period of work on the vessel.

*Id.* at 189 (emphasis added). Relying on *Seckinger's* "model" indemnification clause, the *Hollis* court stated that although the above language does not contain all of the model's significant language, the above provision was "clear and explicit and stated the contractor's obligation to indemnify the Government for any liability caused 'in whole or in part' by the contractor." *Id.* at 191. As a result, the language provided the facial clarity required by *Seckinger.* Id. The court also commented that the provision, while broad, was not unconscionable. 424 F.2d at 190. Courts have "consistently enforced contractual indemnity provisions placing ultimate liability upon an indemnitor, even where the indemnitee's fault also contributed to the loss." *Id.*

The Seventh Circuit Court of Appeals also confronted this indemnification question and held the Government was indemnified for its own negligence when the contractor was partly at fault. *Gillen Co. v. U.S.,* 825 F.2d 1155, 1157 (7th Cir.1987). In *Gillen,* the disputed contract stated:

The Contractor *indemnifies and holds harmless* the Government ... against *all suits, actions, claims,* ... to which the Government ... may be subject or put by reason of damage or injury ... [to] any one other than the Government, ... *arising or resulting in whole or in part from the fault,* negligence, wrongful act or wrongful omission of the Contractor ....

*Id.* at 1155–1156 (emphasis added). The court began its analysis by expressing disfavor for contractual provisions relieving a party from the results of its own negligence and

by stating that such provisions must be strictly construed. *Id.* at 1156 (citing *Seckinger*, 397 U.S. at 210–213, 90 S.Ct. at 884–886). The court emphasized, however, that contract law requires an adherence to the ordinary, plain meaning of language even if the parties construed it differently. *Id.* Referring to *Hollis*, the *Gillen* court held the "in whole or in part" language meant that if the contractor was liable to any degree, than the government was not liable. *Id.* at 1157. Addressing the contractor's argument that the differential of bargaining power should affect the determination, the court concluded the contractor was not at a disadvantage because if he was knowledgeable enough to bid on and receive the contract, he was knowledgeable enough to understand its consequences.[8] *Id.*

The Third Circuit Court of Appeals has not confronted an indemnity provision dispute between the government and a private party; however, the court has rendered opinions that largely mirror the issues presented in this case. These decisions, especially when read in light of the above discussion, shed light on what the Third Circuit Appellate Court's position would be on this indemnification issue. In *Beloit Power Systems, Inc., v. Hess Oil Virgin Islands Corp.*, 757 F.2d 1427 (3d Cir.1985), the court addressed whether Beloit should be indemnified by Hess against damages from a lawsuit brought by an instrument fitter. *Id.* at 1428. The fitter was employed by a third company and was injured at the Hess oil refinery while installing an electrical control panel built by Beloit. *Id.* Beloit had been found ninety-five percent negligent and the fitter had been found five percent negligent. *Id.* Beloit sought indemnity based on the contract of sale which said that "[Hess] agrees to *indemnify and hold*

*harmless* [Beloit] from *all claims* by third parties which extend beyond the foregoing limitations on seller's liability."[9] *Id.* (emphasis added).

Using familiar language, the *Beloit* court first established the issue was "whether the contract clearly and unambiguously provide[d] for indemnity." *Id.* at 1430. Stating it is "hard to imagine language that would be more absolute or unequivocal,"[10] the court held the provision did clearly require Hess to indemnify Beloit from a successful suit based on Beloit's own negligence. *Id.* Relying on *Seckinger*, the Third Circuit Court of Appeals focused on the Supreme Court's refusal to require an explicit statement that indemnification extends to injuries occasioned by the indemnitee's negligence. *Id.* (quoting *Seckinger*, 397 U.S. at 213 n. 17, 90 S.Ct. at 886 n. 17). The *Beloit* court then emphasized its own prior holdings that " 'a broadly worded indemnification clause need not also recite the specific sorts of loss within its coverage.' " (quoting *First Jersey Nat'l Bank v. Dome Petroleum Ltd.*, 723 F.2d 335, 340 (3d Cir.1983)). Further, the court commented that although Beloit did not require Hess to obtain insurance to cover the risk underlying the indemnity provision and such a requirement would "make it clear that risk-shifting was intended," the absence of such a provision was not a critical factor, especially when there was no evidence Hess was not insured. 757 F.2d at 1431. Finally, the court noted:

> Hess' argument depends to a large extent on the anachronistic aversion to contracts that indemnify the indemnitee against losses resulting from its own negligence. *See, e.g., K & S Oil Well Service, Inc. v. Cabot Corp.*, 491 S.W.2d [733, 738 (Tex.Civ.App. 1973)]. We decline to adopt that view. The law now permits the indemnitee to

8. The court also noted the government did not absolve itself from liability on all losses because the government was responsible for losses beyond $300,000 in any single accident. 825 F.2d at 1157.

9. Above this clause, the contract stated:
Under no circumstances shall the seller have any liability for liquidated damages or for collateral, consequential or special damages or for loss of profits or for actual losses, or for loss of production or progress of construction, whether resulting from delays in

delivery or performance, breach of warranty, claims of or negligent manufacture or otherwise. The aggregate total liability of the seller under this contract, whether for breach of warranty or otherwise, shall in no event exceed the contract price.
757 F.2d at 1428.

10. The court later concluded "any other interpretation would deprive the ... sentence of its plain meaning." 757 F.2d at 1431.

recover for its own negligence if the court is firmly convinced that such an interpretation reflects the intention of the parties. *United States v. Seckinger*, 397 U.S. at 211, 90 S.Ct. at 885.

757 F.2d at 1431.

The Third Circuit Court of Appeals was confronted with a similar conflict in *Eastern Airlines, Inc. v. Insurance Co. of North America* ("*Eastern*" or "*Eastern Airlines*"), 758 F.2d 132 (3d Cir.1985). In *Eastern Airlines*, the airline filed an action for declaratory judgment against a janitorial contractor's insurer to determine the rights of the parties after the airline had suffered damages arising out of a lawsuit by an injured janitorial worker. *Id.* at 132–133. Eastern Airlines had been found eighty percent negligent and the employee had been found twenty percent negligent. *Id.* at 133. The language at issue read:

> Contractor agrees and hereby undertakes to *indemnify, defend and save harmless* Eastern ... from and against *any and all liability, damages, claims, suits or actions* ... brought against Eastern... on account of any injuries to any persons ... directly or indirectly *arising out of or resulting from any acts, or omissions or operations on the Part of Contractor*, its agents, servants or employees, except however, injuries, deaths, damages, or losses arising solely from the negligent act of Eastern, its agents or employees....

*Id.* at 133 (emphasis added). Further, the contract required the contractor to "provide, maintain and keep in effect at all times during the existence of this Agreement ... [insurance] covering injury or death of any person and damage or destruction of the property of a person ...." *Id.* The contractor entered into an insurance contract with Insurance Co. of North America which contained a "hold harmless clause" in favor of Eastern. *Id.*

As one of its arguments, the insurance company asserted the indemnity provision did not require the contractor to indemnify the airline for the airline's own negligence because the agreement did not specifically state such liability. *Id.* at 133–134. The court responded that "an indemnity provision need not specifically refer to the indemnitee's negligence if the language is sufficiently broad and unambiguous." *Id.* at 134 (citing *Beloit Power Systems, Inc.*, 757 F.2d at 1431). In addition, the court noted "the provisions requiring ABC to secure insurance 'manifest[ed] an intent to shift the risk.' " *Id.* at 134 (quoting *Beloit Power Systems, Inc.*, 757 F.2d at 1431). The court then held the contract language was unambiguous and "patently cover[ed] a claim" such as the one in dispute. 758 F.2d at 134. Finally, the court stressed it did "not share the aversion of some courts to contractual efforts to shift the perceived risks among the parties to a business transaction." *Id.* at 135. It is significant that although the "solely negligent" clause at the end of the indemnification provision arguably could have supported the court's interpretation of the entire provision, the court did not rely on this last clause for its holding.[11]

Given this framework, this Court now turns to the contractual provision in dispute between AAFES and Hogan. The relevant language states that Hogan will

> *indemnify, hold harmless and defend* AAFES and all other agencies and instrumentalities of the United States, their agents ... from and against *all claims, demands, actions, debts, liabilities, judgments,* costs and attorney's fees arising out of, claimed on account of, or in any manner predicated upon loss of or damage to the property of and injuries to ... any and all persons, in any manner *caused or contributed to by contractor*, his/her agents, servants, or employees, while in, upon or about the military reservation or worksite herein involved, or while going to or departing from the same and to indemnify and hold harmless AAFES, from and on account of damages of any kind which AAFES may suffer as the result of the actions of any of contractor's agents, servants or employees in or about said military reservation or work site.

---

11. The court did, however, rely on this last phrase to confront the argument that indemnification did not apply because the airline was allegedly solely negligent. 758 F.2d at 134.

D.I. 69 at A–1 (emphasis added). To facilitate the analysis without distorting the meaning, it is helpful to abbreviate the relevant language as follows: Hogan will "indemnify, hold harmless and defend AAFES ... from and against all claims, demands, actions, debts, liabilities, judgments... arising out of ... injuries to ... all persons, in any manner caused or contributed to by contractor, his/her agents, servants, or employees...." [12] *Id.*

Looking first to the Third Circuit Court of Appeals cases, it is apparent the AAFES contract is clearer than the one at issue in *Eastern Airlines.* Although the Eastern provision also contained the "hold harmless" clause and broad "all claims" language, that provision stated that liability would be imposed on the contractor for claims arising out of "any acts .. on the Part of Contractor." 758 F.2d at 133. Given the discussion in *Seckinger*, this last phrase could have been interpreted as limiting liability to the contractor's negligence more easily than the language in the AAFES contract, which imposes liability for all claims arising out of injuries "*caused or contributed to by*" the contractor. D.I. 69 at A–1 (emphasis added).[13] However, the *Eastern* court held the provision to be unambiguous. *Eastern*, 758 F.2d at 134. Similarly, the language in the AAFES contract is clearer than that found unambiguous in *Beloit.* In *Beloit*, although the contract also contained an "indemnify and hold harmless" clause and referred to "all claims," the contract did not, like the AAFES contract, clearly indicate that liability would be imposed even if the contractor had only contributed to the injury. As a result, the *Beloit* provision also could have more easily been

viewed as ambiguous, but the court found no such problem.

The appellate holdings involving the government and a private party also provide strong support for finding clarity on the face of the AAFES contract. First, while recognizing the Supreme Court's admonition against giving controlling meaning to any specific language, the courts concluded that *Seckinger* strongly implied that "indemnify and hold harmless" language, present in the AAFES contract, provides evidence of a mutual intent to indemnify the indemnitee against his own negligence. *Smith*, 497 F.2d at 508; *Gibbs*, 599 F.2d at 40; *Hollis*, 424 F.2d at 191. This Court agrees. Second, starkly unlike the *Seckinger* provision holding the contractor liable for all damages that occurred as a result of "*his* fault or negligence[,]" 397 U.S. at 208 n. 9, 90 S.Ct. at 883 n. 9 (emphasis added), the language in the AAFES contract indemnifies the government against all claims "*caused or contributed to by*" the contractor. D.I. 69 at A–1 (emphasis added). In light of the virtual identity between the "caused or contributed to" AAFES language and the "in whole or in part" language at issue in *Gillen* and *Hollis*, those courts' discussions are instructive in their conclusion that "in whole or in part" indicates a clear intent to provide complete indemnification for the government's negligence as long as the contractor is also found negligent. Third, the AAFES contract's broad "all claims, demands, ..." language was absent from *Seckinger* but present and significant in *Smith*, *Gibbs*, *Hollis*, and *Gillen.* As a result, although the AAFES language is somewhat weaker than that addressed by *Gibbs*, it is as strong as that at issue in *Gillen* and *Hollis* and stronger than the disputed lan-

---

**12.** There was also a question of whether the final clause of the indemnification provision created any ambiguity in the overall provision. The final clause states the contractor is obligated

> to indemnify and hold harmless AAFES, from and on account of damages of any kind which AAFES may suffer as the result of the actions of any of contractor's agents, servants or employees in or about said military reservation or work site.

D.I. 69 at A–1. It is apparent that, while the first portion of the indemnification provision refers to injuries of third parties or the property of third parties for which the government is being sued,

this provision addresses damages (i.e., harm) to AAFES. As a result, it is both logical and necessary that Hogan would only be responsible for the harm that it causes AAFES and not for the harm that AAFES imposes upon itself. Accordingly, this clause is unambiguous and irrelevant to the resolution of the contested issue.

**13.** As noted before, although the final clause of Eastern Airlines' contractual provision could arguably serve as a point of departure, the *Eastern* court in no way relied upon this language for its holding.

guage in *Smith,* all of which were found unambiguous. *Gibbs,* 599 F.2d at 42; *Gillen,* 825 F.2d at 1157; *Hollis,* 424 F.2d at 191; *Smith,* 497 F.2d at 508.

Hogan, however, argues the Court should rely on two Ninth Circuit Court of Appeals cases to arrive at an opposite conclusion. In *United States v. English,* 521 F.2d 63 (9th Cir.1975), the Ninth Circuit Court of Appeals held the government was not entitled to indemnification by the contractor for the government's negligent acts. *Id.* at 67. The government had been the only party found negligent. *Id.* The provision at issue in that case stated that the contractor would be "responsible for all damages to person or property that occur as a result of *his* fault of (sic) negligence" and would "*hold and save the government* ... from liability of any nature occasioned by *his* operations." *Id.* (emphasis added). After expressing the "traditional reluctance of courts to cast the burden of negligent actions upon those who were not actually at fault," *id.* at 67, the court stated that the language, like in *Seckinger,* did not clearly express an intention by the contractor to accept liability for any negligence except his own. *Id.*

Similarly, in *United States v. Contract Management, Inc.* ("*Contract*"), 912 F.2d 1045 (9th Cir.1990), the government sought indemnification for a settlement paid to the contractor's employee who had been injured on the job. *Id.* at 1046. The government was found to be solely negligent in this case as well. *Id.* The relevant contractual language stated:

> The Contractor shall be liable and will *indemnify and hold harmless* the Government for *all damages* to persons and property, arising or resulting from the fault, negligence wrongful act, or wrongful omission *of the Contractor,* his agents or employees. The Government shall only be responsible for loss or damages ... in accordance with the Federal Tort Claims Act.

*Id.* at 1046 (emphasis added). The same section later provided the contractor would

"be responsible for all damages to persons and/or property that occurs as a result of *his* fault or negligence." *Id.* (emphasis added). The next section, however, stated the contractor would "*indemnify and hold the Government harmless* in connection with *any liability* which may result from injuries ... of any employees of the Contractor while they are doing work in accomplishment of this contract." *Id.* (emphasis added).

The court stressed that, like in *English,* the first section of the relevant language clearly imposed liability only for those damages arising out of "his" (i.e., the contractor's) negligence. *Id.* at 1048. As a result of this limiting language, the "indemnify and hold harmless" phrase in the second section could not be construed to demonstrate CMI's acceptance of liability for the government's own negligence. *Id.* Although recognizing that in previous cases it had acknowledged the significance of "hold harmless" language, the court stated such language is only one factor to consider in determining the clear intentions of the parties. *Id.* The court concluded that, especially in light of its "continued concern over the public policy ramifications of allowing the government to shift the burden of its negligent acts to its economically weaker contractor," the language at issue was insufficient to protect the government against its own negligent acts.[14]

Contrary to Hogan's assertions, these cases prove inapposite. First, these decisions "rested on contractual language distinguishable from that involved" in the AAFES contract. *Gibbs,* 599 F.2d at 41. The critical limitation of the *Seckinger, English* and *Contract* provisions to all *damages* resulting from the *contractor's* fault is not present in the AAFES contract. Rather, the AAFES contract, like the contracts discussed in *Smith, Hollis, Gibbs, Gillen,* and *Beloit,* has much broader "all claims ..." liability language and refers to claims arising out of any work under the contract or out of partial negligence by the contractor. Moreover, the *Eastern Airlines* court, even when presented with language imposing liability only for

---

**14.** Although the *Contract* court did not discuss the clause imposing liability on the government "in accordance with the Federal Tort Claims

Act," this language arguably demonstrated an intent for the government to retain responsibility for its own negligence.

claims arising out of the contractor's actions, did not mention this potential limitation but rather held the remaining "all claims" and "hold harmless" clauses were broad and unambiguous enough to resolve the issue. As a result, it can be persuasively argued the Third Circuit Appellate Court does not consider the "contractor's fault" language to be controlling when the rest of the provision is clear. This is particularly compelling given the AAFES contract not only has broad liability language but also lacks this potentially problematic limitation.

The second significant difference between the Ninth Circuit Court of Appeals cases and the case at bar is that in the former, only the government was negligent. As previously discussed, several of the other circuits held the contractor liable only if he was at least partially negligent. The greater degree of resistance by courts when the government is claiming indemnification against claims arising solely from its own negligence was expressed by the Third Circuit Court of Appeals in *Eastern Airlines*. In *Eastern*, the appellate court commented on the contract's "sole negligence" exception to the indemnification provision in a section unrelated to the analysis of the provision's clarity. 758 F.2d at 134. The court stated that the "widespread use of 'sole negligence' provisions may be explained in part by the reluctance of many courts to enforce an all-inclusive indemnity provision." *Id.* Nevertheless, the Third Circuit Court of Appeals in *Beloit* overcame this reluctance and held the contractor responsible for the government's negligence even though the contractor was not liable. 757 F.2d at 1431. Therefore, the Ninth Circuit Court of Appeals confronted not only the more limiting *Seckinger* language but also its own resistance to imposing liability in cases in which only the government was at fault.

The problems inherent in applying the Ninth Circuit Court of Appeals decisions to the case at bar become even more apparent when the jurisprudence of the Ninth and Third Circuit Courts of Appeal are compared. While both courts adhere to the requirement of finding facially clear and unambiguous language before obligating a contractor to indemnify the government for its own negligence, the courts offer somewhat divergent views on the issue of such indemnification. The Ninth Circuit Court of Appeals expressed its "traditional reluctance ... to cast the burden of negligent actions upon those who were not actually at fault," 521 F.2d at 67, while the Third Circuit Court of Appeals explicitly stated it "does not share the aversion of some courts to contractual efforts to shift the perceived risks among the parties to a business transaction." *Eastern Airlines*, 758 F.2d at 134. *See also Beloit*, 757 F.2d at 1431 (discussing this philosophy). Although this comment was made in *Eastern Airlines*, which involved two private parties, the court referred to *Seckinger* just before making this comment and did not seem to be limiting its philosophy to solely private party cases. *Id.*

In addition to claiming the indemnification provision itself is ambiguous, Hogan argues the separate insurance requirement conflicts with the provision in a way that confirms the provision's ambiguity. As part of the AAFES contract, Hogan was required to purchase and maintain liability insurance that named the United States and AAFES as "additional and several insureds with respect to claims, demands and expenses arising out of or in connection with any loss, damage or injury resulting from acts or omissions of contractor." D.I. 69 at A–1. Hogan argues the insurance clause only requires coverage for those portions of claims or expenses caused by the contractor. Because it would be illogical for the government to impose liability on Hogan without guaranteeing financial support for all such liability, Hogan argues the insurance clause raises at least a serious question as to whether the indemnification provision was intended to cover the government's own negligence. Without holding as to the merits of Hogan's arguments, the Court concludes for the reasons discussed below that the insurance provision does not undermine the clarity or integrity of the indemnification provision.

In pointing to the insurance clause, Hogan relies on a discussion in the Ninth Circuit Court of Appeals *Contract* case. In *Con-*

*tract,* the court addressed the significance of an insurance clause which required the contractor to "maintain insurance for bodily injury and property damage liability covering his own liabilities . . . ." 912 F.2d at 1047. The court construed this language in light of another insurance clause which stated that the contractor "warrant[s] that its price includes no cost for insurance or contingency to cover . . . third party liabilities for which the Government is responsible under the above clause." *Id.* The *Contract* court decided the first provision only clearly required insurance for the contractor's own acts. 912 F.2d at 1047. In addition, if the indemnification provision were construed in favor of the government, the second insurance clause would lead to the unconscionable result of forcing the contractor to insure against the government's negligence while not allowing the contractor to include that cost in its contract price. *Id.* The court reasoned that if the government requires such complete indemnification, contractors will have to increase their bids in order to underwrite the risks. *Id.* at 1048.

Even if the Court were to accept Hogan's argument that the AAFES insurance provision is more limited in its scope than the terms of the indemnification provision, such a purported limitation does not render the unambiguous indemnification language ambiguous. First, the terms of the contract do not preclude the contractor from obtaining more coverage if the contractor does not want to underwrite the cost of damages resulting from the government's negligence. Second, although it may be imprudent for the government to require indemnification for its own negligence but not to require insurance to cover the same, such a weakness in the government's planning does not rise to the level of a contradiction or render the indemnification language unclear. Third, the *Contract* court argued strongly against construing the language in favor of the government because the government forbade the contractor from including the cost of insurance in the contract price. The AAFES contract imposes no such constraint. As a result, the insurance clause does not undermine the validity or clarity of the indemnification language.

As its final argument, Hogan relies on the maxims construing a contract against the drafter and favoring the party with less economic and bargaining power. The Supreme Court stated:

[A]s between two reasonable and practical constructions of an ambiguous contractual provision, . . . the provision should be construed less favorably to that party which selected the contractual language. This principle is appropriately accorded considerable emphasis [in cases in which] the Government's vast economic resources and stronger bargaining position in contract negotiations [are present].

*Seckinger,* 397 U.S. at 203, 90 S.Ct. at 881. Although this Court does not necessarily agree with the *Gillen* court's assumption that knowledge sufficient to bid on the contract automatically implies enough knowledge to understand its provisions, 825 F.2d at 1157, this Court agrees with the *Smith* court's conclusion that such maxims cannot supplant clear language. 497 F.2d at 508. This position is also consistent with basic tenets of contract interpretation. *In re Unisys Corp.,* 97 F.3d at 716; *Epright v. Environmental Resources Management, Inc.,* 81 F.3d 335, 339 (3d Cir.1996). Finally, because this Court finds the AAFES contract is unambiguous, the Supreme Court's mandate does not apply.

### Conclusion

The Court holds the AAFES contract is unambiguous and shifts liability for the government's negligence onto Hogan in situations in which Hogan has at least contributed to the injury giving rise to the cause of action. As a result, summary judgment will be granted to the government on the issue of indemnification and appropriate declaratory relief will be granted upon presentation of a proposed order within twenty days.